## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 23-90566 (CML) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION
## FOR ENTRY OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
## TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND
## MAINTAIN EXISTING BANK ACCOUNTS, (B) CONTINUE TO PERFORM
## INTERCOMPANY TRANSACTIONS, AND (C) MAINTAIN EXISTING BUSINESS
## FORMS AND BOOKS AND RECORDS, AND (II) GRANTING RELATED RELIEF

**Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 23, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 23, 2023, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance"**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975). The location of the Debtors' service address is: 3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

**link on Judge Lopez's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (this "Motion"):[2]

### Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the attached forms (the "Interim Order" and "Final Order," respectively), (a) authorizing the Debtors to (i) continue to operate their cash management system and maintain their existing bank accounts, including honoring certain prepetition obligations related thereto, (ii) continue intercompany transactions and funding consistent with their historical practices, and (iii) maintain existing business forms and books and records in the ordinary course of business, and (b) granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157 (b).  The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 345, 362, 363, 364, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the

---

[2]      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael DeVries, Chief Financial Officer of Benefytt Technologies, Inc. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on May 23, 2023 (the "Petition Date").  Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1(b)

of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

### Background

5.      The Debtors are a technology-driven distributor of insurance products covering

accidents, health benefits, life, and short-term medical that operate in 44 states including Texas,

New York, California, and Florida.    Headquartered in Tampa, Florida and employing

approximately 855 people, the Debtors develop and operate Medicare and private health insurance

online marketplaces, insurance agent technology systems, and insurance policy administration

platforms, as well as conduct marketing and lead generation for insurance providers.  The Debtors

provide self-guided online tools for individuals to compare Medicare, private, and supplemental

health insurance products; an extensive network of licensed insurance agents empowered by a

proprietary online platform to facilitate enrollments; and other insurance technology allowing

agents and carriers to service their customers and manage their business seamlessly.

6.      On the Petition Date, the Debtors filed voluntary petitions for relief under

chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have

filed a motion requesting procedural consolidation and joint administration of these chapter 11

cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in

these chapter 11 cases and no official committees have been appointed or designated as of the date

hereof.

## The Cash Management System

**I.**     **Overview.**

7.     The Debtors operate a complex cash management system (the "Cash Management System").  Debtor Bank Accounts (as defined herein) are attached as **Exhibit A** and a schematic of the Cash Management System is attached as **Exhibit B**.  The Debtors use the Cash Management System to collect, transfer, and disburse funds, and to facilitate cash monitoring, forecasting, and reporting.  The Debtors' treasury department maintains daily oversight of the Cash Management System and implements cash management controls for accepting, processing, and releasing funds, including in connection with any Intercompany Transactions.  The Debtors' accounting department regularly reconciles the Debtors' books and records to ensure that all transfers are accounted for properly.

8.     The Cash Management System is similar to those commonly employed by businesses comparable in size and scale to the Debtors to help control funds, ensure cash availability for each entity, and reduce administrative expenses by facilitating the movement of funds among multiple entities.  The Debtors estimate that their cash receipt collections and operating disbursements averaged approximately $167.7 million and $375.0 million, respectively, per month in the twelve months prior to the Petition Date.

9.     Any disruption to the Cash Management System would have an immediate and significant adverse effect on the Debtors' businesses and operations.  To minimize the disruption caused by these chapter 11 cases, the Debtors request authority to continue using their existing Cash Management System during the pendency of these chapter 11 cases, subject to the terms described herein.

II.     **The Bank Accounts and Flow of Funds.**

10.     As of the Petition Date, the Cash Management System consists of 78 bank accounts (each, a "Bank Account" and, collectively, the "Bank Accounts"), each of which is owned and controlled by the Debtors (the "Debtor Bank Accounts").

11.     The Debtor Bank Accounts consist of the following:

- 39 Bank Accounts maintained at Truist Bank ("Truist Bank");

- 9 Bank Account maintained at Wells Fargo Bank, N.A. ("Wells Fargo");

- 29 Bank Accounts maintained at Bank of America NA ("BoA"); and

- 1 Bank Account maintained at Woodforest National Bank ("Woodforest").

12.     The Debtor Bank Accounts include three (3) main accounts maintained by Debtor Health Plan Intermediaries Holdings, LLC, (i) the account maintained at Truist Bank (account number ending in 5061) (the "Aggregate Operational Account"), (ii) the account maintained at BoA (account number ending in 2234) (the "Payroll Account"), and (iii) the low-activity account maintained at Wells Fargo (account number ending in 2489) (the "Bank Expenses Account").  The Debtors' business operations generate funds primarily from their Accident and Health arm (the "A&H Arm") and Medicare arm (the "Medicare Arm").  The A&H Arm markets and directly sells certain third-party insurance products, whereas for Medicare, the debtors' agents enroll customers directly into Medicare plans.  The funds deposited through the A&H Arm and Medicare Arm flow through the Debtors cash management banks (the "Cash Management Banks") and fund operations.

13.     **A&H Arm**.  On the A&H Arm side of the company, individuals purchase insurance products through the Debtors who collect all purchase monies paid by individuals (the "A&H Funds").  In turn, monies may then be remitted to the relevant third party sellers for applicable commissions through the HPIH Commission Account, remitted back to the Aggregate Operational

Account, or remitted from the Aggregate Operational Account to the relevant insurance providers by way of the debtors' restricted bank accounts. A&H Funds are deposited into one of the Debtors' four A&H Arm premium deposit accounts (the "A&H Deposit Accounts"). Two A&H Deposit Accounts transfer funds to the Aggregate Operational Account on a regular basis, one of which also directly pays certain chargebacks and refunds in the event individual refund requests are received for any reason. One A&H Deposit Account transfers funds to the Bank Expenses Account. The remaining A&H Deposit Account is currently in winddown. Two A&H Deposit Accounts accept credit card payments, and one A&H Deposit Account accepts ACH and electronic check payments. Once A&H Funds are in the Aggregate Operational Account, the Debtors use the funds for a variety of operating disbursements in ordinary course, including the payment of premiums owed to insurance providers. Payments to insurance providers are transmitted through a number of restricted bank accounts.

14.     A&H Funds collected from individuals are generally not directly transmitted to the Debtors. Rather, A&H Funds are initially processed and aggregated by certain third-party payment processors, gateways, and anti-fraud monitors (collectively, the "Payment Facilitators"). By settling transactions between the issuing bank, acquiring bank, and credit card company, the Debtors' payment processors facilitate accepting payments from individuals via, among others, American Express, Visa, MasterCard, and Discover networks as well as other credit and debit cards. The payment processors remit to the Debtors such payments on a daily basis, approximately one day in arrears, subject to first taking an applicable payment processing fee related to gross sales that varies by payment network, in accordance with the terms of an agreement between the payment processor and the Debtors. The Debtors also maintain a relationship with a service provider that provides gateway services (*e.g.*, transmits encrypted credit card information between

the customer, issuing bank, and acquiring bank).  Last, the Debtors' payment processing system includes an anti-fraud monitor that checks customer credit card inputs to detect potentially fraudulent behavior and, when flagged, such monitoring services prevent such payments from occurring.

15.     **Medicare Arm**.  The Debtors' Medicare Arm sells Medicare insurance products to individuals.  After the Debtors make a sale, they notify the Medicare Carrier ("the <u>Medicare Carrier</u>") for the Medicare insurance product sold and the Medicare Carrier obtains payment for the product from the Medicare entity for the U.S. Government. When payment is received, the Medicare Carrier remits to the Debtors their respective portions of such collections (the Debtors' portion of such collections, the "<u>Medicare Funds</u>").  Medicare Carriers deposit the Debtors' Medicare Funds into one of four separate deposit accounts (the "<u>Medicare Deposit Accounts</u>") based on the nature of the coverage purchased by the individual.  The Debtors remit the Medicare Funds collected in the Medicare Deposit Accounts to the Aggregate Operational Account on a daily basis for any ZBA accounts and on a weekly basis for all other such accounts.

16.     **Aggregate Operational Account**.  The Aggregate Operational Account is essentially the Debtors' master disbursement account used to fund the vast majority of the Debtors' payment obligations to third parties, including tax payments, legal and professional fees, interest and principal payments on account of funded debt, premiums owed to the Debtors' insurers, obligations related to the Credit Card Program (as defined herein), and other operational expenses and accounts payable.  The Aggregate Operational Account also funds other accounts in the Debtors' Cash Management System.  Most notably, the Aggregate Operational Account jointly funds the Bank Expenses Account and is the sole means of funding the Payroll Account.  Further, the Aggregate Operational Account funds each of twenty-six (26) restricted premium funds trust

accounts that the Debtors maintain in connection with their own insurance coverage. The funds from the Aggregate Operational Account are moved into the various restricted premium funds trust accounts on a monthly basis via ACH and wire transfers.

17.     Last, the Aggregate Operational Account also jointly funds with one of the A&H Premium Deposit Accounts, an account used to pay third-party sellers on account of commissions and employees by way of the Payroll Account. The Aggregate Operational Account also jointly funds with one of the A&H Premium Deposit Accounts, an account used to pay employees on account of commissions. The Aggregate Operational Account is funded by regular disbursements from two of the A&H Deposit Accounts and each of the Medicare Deposit Accounts.

18.     **Payroll Account**. The Payroll Account is used to pay all wages (other than commissions) owed by the Debtors to all categories of the Debtors' employees. Due to the nature of the Debtors' operations, certain employees are paid on a weekly basis whereas others are paid on a bi-weekly basis. Accordingly, the Debtors process and make payroll-related disbursements from their Payroll Account via Ultimate Kronos Group (UKG) on a weekly basis to the Debtors' payroll processor. The Payroll Account is funded solely by disbursements from the Aggregate Operational Account made on a regular basis.

19.     **Bank Expenses Account.** The Bank Expenses Account is funded by regular payments disbursed from the Aggregate Operational Account and, indirectly, from one of the A&H Deposit Accounts. The Bank Expenses Account typically has little activity and a low balance. The Bank Expenses Account is primarily used to pay certain bank servicing expenses.

20.     **Other Accounts**. The Debtors have thirty-six (36) inactive accounts, thirty (30) of which are zero-balance accounts, that were primarily set up to be used as the main operating accounts, to receive and pay commissions, and to distribute payroll. However, the Debtors decided

to use another bank for the mentioned purposes; therefore, those bank accounts were opened, never used, and yet to be closed.

21.     Ordinary course transfers between the Debtor Bank Accounts are an integral part of the Debtors' Cash Management System because the Debtors support their operations through such transfers.  The Debtor Bank Accounts are identified on **Exhibit A** attached hereto.

22.     The Debtor Bank Accounts and the Cash Management System are described further in the following table:

| Bank Accounts | Descriptions of Accounts |
|---|---|
| *Debtors' Operational Bank Accounts* | |
| Aggregate Operational Account<br>*Truist Bank Account ending in 5061* | The Debtors maintain the Aggregate Operational Account ending in 5061.  All funds received in other accounts are pooled into the Aggregate Operational Account.  This account is used to provide payments for operating expenses and reimburse third parties. This account is also used to pay Amex for obligations arising from the Credit Card Program. |
| Payroll Account<br>*BoA Account ending in 2234* | The Debtors maintain the Payroll Account ending in 2234.  This account is used to meet the majority of the Debtors' payroll obligations. |
| Bank Expenses Account<br>*Wells Fargo Account ending in 2489* | The Debtors maintain the Bank Expenses Account ending in 2489. This account is a low-activity account that is used to provide payments to Wells Fargo on account of fees for banking services.  Formerly, this account funded the Debtors' prior non-Amex credit card program. |
| Inactive Accounts | The Debtors maintain 36 inactive or zero-balance bank accounts. |
| *A&H Deposit Accounts* | |
| | The Debtors maintain four A&H Deposit Bank Accounts primarily for collections from merchants. |
| Merchant Account No. 1<br>*Wells Fargo Account ending in 3154* | The Debtors maintain a Wells Fargo Bank account ending in 3154. This account provides funding to the Aggregate Operational Account.  The funds from this bank account are automatically swept to Premium Trust Account No. 1 and are used to indirectly fund the payment of commissions. |
| A&H Premium Account<br>*(in wind down)*<br>*BoA Account ending in 1926* | The Debtors maintain a BoA Bank account ending in 1926.  This bank account is currently in winddown. |
| Merchant Account No. 2<br>*Woodforest Account ending in 6338* | The Debtors maintain a Woodforest Bank account ending in 6338.  This account provides funding to the Aggregate Operational Account. |

| Bank Accounts | Descriptions of Accounts |
|---|---|
| A&H Premium Trust Account No. 2<br>*Truist Account ending in 1580* | The Debtors maintain a Truist Bank account ending in 1580.  This bank account is used to directly pay some vendors and carriers. |
| *Medicare Deposit Accounts* ||
| Humana Direct Account<br>*Truist Account ending in 2047*<br><br>Medicare Account No. 1<br>*Truist Account ending in 1269*<br><br>Medicare Account No. 2<br>*Truist Account ending in 0675*<br><br>Medicare Account No. 3<br>*Truist Account ending in 0683* | Commission payments received from Medicare Providers. No disbursements are made from these accounts; all are used to fund Truist Operating Account 5061. Medicare Carriers deposit the Debtors' Medicare Funds into one of four separate deposit accounts based on the nature of the coverage purchased by the individual. Subsequently, the Debtors remit the Medicare Funds collected in the Medicare Deposit Accounts to the Aggregate Operational Account on a daily basis for any ZBA accounts and on a weekly basis for all other such accounts. |
| *Other Types of Accounts* ||
| **Adequate Assurance Account**<br><br>*Truist Account ending in 1564* | Debtor Health Plan Intermediaries Holdings, LLC maintains a bank account with Truist Bank ending in 1564 (the "Adequate Assurance Account").   The Adequate Assurance Account will hold a certain amount as adequate assurance for utility providers, as further described in the Utilities Motion.[3] |
| **Other Debtor Bank Accounts**<br><br>Commission Account<br>*Wells Fargo Account ending in 2521* | The Debtors maintain a Wells Fargo Bank account ending in 2521.  This account is primarily used for commissions payments to third-party vendors and to satisfy certain minimum deposit obligations. |
| Premium Trust Account No. 1<br>*Wells Fargo Account ending in 2497* | The Debtors maintain a Wells Fargo Bank account ending in 2497. This account funds the Bank Expenses Account and the Commission Account. |
| Minimal Activity Accounts<br>*8 bank accounts listed on* ***Exhibit A*** | The Debtors maintain eight Minimal Activity Accounts.  Minimal Activity Accounts were historically used to collect cash for certain providers based on various contractual arrangements. As a result, certain immaterial funds are collected into these accounts intermittently. The Debtors do not make disbursements out of these accounts. |
| Other Premium Trust Accounts<br>*26 bank accounts listed on* ***Exhibit A*** | The Debtors maintain 26 Truist Premium Trust Accounts, 6 of which are inactive.  Premium Trust Accounts are used to store and distribute remitted portion of A&H funds that are remitted by the Debtors to each insurance provider. |

---

[3]   Contemporaneously herewith, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services (III) Approving Debtors' Proposed Procedures for Resolving Adequate Assurance Requests and (IV) Granting Related Relief* (the "Utilities Motion").  The Adequate Assurance Account will be funded in accordance with the terms and procedures set forth in any order entered in connection with the Utilities Motion.

23.    As of the Petition Date, there was approximately $1.5 million in cash in the aggregate in the Debtor Bank Accounts.

**A.    Bank Fees.**

24.    The Debtors incur periodic service charges and other fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees").  Included in these Bank Fees is a payables integrative solution provided to process the Debtors payroll and outgoing third-party payments.  The Debtors incur approximately $30,000 in the aggregate in Bank Fees each month under the Cash Management System to maintain the Debtor Bank Accounts.  The Debtors estimate that they owe approximately $35,000 total in prepetition Bank Fees as of the Petition Date.  To maintain the integrity of their Cash Management System, the Debtors request authority to pay any prepetition Bank Fees for prepetition transactions that are charged postpetition and to continue to pay the Bank Fees in the ordinary course on a postpetition basis.

**B.    Credit Card Program.**

25.    As part of the Cash Management System and in accordance with the terms of an agreement with American Express International, Inc.  ("Amex"), the Debtors provide certain employees with access to credit cards issued by Amex pursuant to the Debtors' corporate credit card program and related policies (the "Credit Card Program").  The Credit Card Program enables certain employees to use credit cards to cover certain payments for travel expenses, such as hotel stays and meals, and other necessary and approved company expenditures rather than incur such costs and seek reimbursements.  In addition to travel expenses, certain employees use the credit cards to pay certain demand generation vendors who do not accept other forms of payment.  As of the Petition Date, the Debtors have issued 26 Amex green or platinum credit cards to employees under the Credit Card Program.  The Debtors' use of the Amex credit cards provides access to a rewards program that accumulates points that can be used to offset amounts owing to Amex.

26.     During calendar year 2022, the Debtors have averaged paying approximately $315,000 in the aggregate per month on account of obligations relating to the Credit Card Program (the "Credit Card Obligations").  Debtor Health Plan Intermediaries Holdings, LLC pays all Credit Card Obligations to Amex monthly in arrears.

27.     The Credit Card Program is an integral part of Cash Management System. Employees' continued use of the credit cards for procurement and travel purposes is essential to the continued operation of the Debtors' businesses.  As applicable, and to the extent not otherwise authorized under any order of this Court granting the relief requested in the Wages Motion,[4] the Debtors seek authority to (a) continue using credit cards and incurring Credit Card Obligations on a postpetition basis pursuant to the Credit Card Program, subject to the terms of any applicable debtor-in-possession financing orders and related postpetition loan documents pursuant to which the credit card obligations are included as obligations thereunder; and (b) honor all past and future credit card obligations of any of the Debtors to Amex in connection with the Credit Card Program, in the ordinary course of business on a postpetition basis, including, without limitation, making timely payments on account of charges that were made under the Credit Card Program both prior to and after the Petition Date.

**III.    Compliance With the U.S. Trustee Guidelines and the Bankruptcy Code.**

28.     Compliance with the *Region 7 Guidelines for Debtors-in-Possession* (the "U.S. Trustee Guidelines") for the United States Trustee for the Southern District of Texas (the "U.S. Trustee") generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with certain

---

[4]    The "Wages Motion" means the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

requirements set by the U.S. Trustee.  Section 345(b) of the Bankruptcy Code requires a debtor's

bank to post a bond unless a debtor's funds are "insured or guaranteed by the United States or by

a department, agency, or instrumentality of the United States or backed by the full faith and credit

of the United States."  11 U.S.C. § 345(b).

29.     Three out of four Cash Management Banks where the Debtor Bank Accounts are

maintained—BoA, Truist Bank, and Wells Fargo — are authorized depositories or affiliates of

authorized depositories under the U.S. Trustee Guidelines, while the remaining bank —

Woodforest — is not.  The Debtors maintain only one bank account out of eighty-one bank

accounts at Woodforest.  The only Woodforest bank account, Merchant Account No. 2, is the A&H

Deposit Account that is used solely to collect A&H Funds that are swept into the Aggregate

Operational Account once or twice a quarter.  The Cash Management Bank at which the Merchant

Account No. 2 is maintained is used to facilitate the movement of cash in from the Payment

Facilitators to the Aggregate Operational Account in accordance with the terms of an agreement

between the payment processor and the Debtors, and if the Debtors are not permitted to maintain

the A&H Deposit Account, the Payment Facilitators that make regular deposits to the account will

likely have to submit their deposits by other means, creating additional operational and

administrative burdens and expenses to the detriment of the Debtors' business and their estates.

Such disruption is particularly unwarranted in this case as all of the Debtor Bank Accounts are

insured by the Federal Deposit Insurance Corporation.  Thus, three of four Cash Management

Banks are compliant with the U.S. Trustee Guidelines, and all but one of the Debtor Bank Accounts

are in compliance.

30.     The principal basis for the exclusion of certain of these financial institutions from

the U.S. Trustee Guidelines is location, not financial soundness or stability.  Woodforest was

founded in 1980 in Woodlands, Texas and since has had an excellent reputation. Today, Woodforest has nearly 800 branches across seventeen states and serves hundreds of thousands of customers annually. The Debtors believe that Woodforest is well-positioned to continue to perform depository and cash management functions during the chapter 11 cases and, accordingly, respectfully submit that cause exists to allow the Debtors to continue utilizing the existing Bank Accounts consistent with historical practice. Given the circumstances, it is not feasible to consolidate all cash activities into the narrow group of financial institutions approved in the U.S. Trustee Guidelines.

31.     Requiring the Debtors to transfer their Bank Accounts to designated authorized depositories or for the Cash Management Banks to post a bond would place a needless administrative burden on the Debtors and impose unnecessary costs on the Debtors' estates. Cause exists (a) to continue to allow the Debtors to utilize their existing Bank Accounts, subject to any reasonable changes the Debtors may implement to the Cash Management System, and (b) to waive the deposit requirements of section 345(b) of the Bankruptcy Code.

32.     To the extent the Court does not determine that the requirements of section 345(b) of the Bankruptcy Code are satisfied, the Debtors alternately request a forty-five-day waiver of the requirements of section 345(b), subject to the Debtors' rights to seek further extensions thereof.

**IV.     Business Forms and Books and Records.**

33.     The Debtors use a variety of preprinted business forms (including letterhead, correspondence forms, invoices, and other business forms) in the ordinary course of business (collectively, and as they may be modified from time to time, the "Business Forms"). The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records"). To avoid a significant disruption to their business operations and to minimize administrative expense to their estates, the Debtors request

authorization to continue using all of the Business Forms and Books and Records in a manner consistent with prepetition practice, without reference to the Debtors' status as chapter 11 debtors in possession.

## V.     Intercompany Transactions.

34.     The Debtors routinely engage in certain intercompany financial transactions with each other (the "Intercompany Transactions").  As a result of the Intercompany Transactions, there may be claims owing by or to one Debtor to another Debtor at any given time.  The most common Intercompany Transaction is payroll distribution.  Funds generated by the Debtors' operations are regularly swept into the Aggregate Operational Account and funds used for payroll are transferred on a weekly basis in the Payroll Account in accordance with the amount of payroll accrued and payable.  Otherwise, the Debtors' treasury monitors accounts on a daily basis and determines the need and amount of Intercompany Transactions.

35.     The Intercompany Transactions are an essential component of the Debtors' operations and the Cash Management System.  Any interruption of the Intercompany Transactions would severely disrupt the Debtors' operations and greatly harm the Debtors' estates and their stakeholders.   The Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business on a postpetition basis, in a manner substantially consistent with the Debtors' past practice.[5]

---

[5]    This motion provides an overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this motion.   To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations.

**Basis for Relief**

**I.     The Court Should Approve the Debtors' Continued Use of the Cash Management System.**

36.     The Cash Management System constitutes an ordinary course and essential business practice of the Debtors.  The Cash Management System provides significant benefits to the Debtors including, among other things, the ability to control corporate funds, ensure the availability of funds when necessary, and reduce costs and administrative expenses by facilitating the movement of funds and developing timely and accurate account balance information.  Thus, to ensure the stable operation of the Debtors' businesses and realize the benefits of the Cash Management System, the Debtors should be allowed to continue using the Cash Management System and should not be required to open new bank accounts.

37.     The U.S. Trustee Guidelines require debtors to, among other things:  (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes); (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor in possession status of the chapter 11 debtor, including checks that bear the designation "debtor in possession" and reference the bankruptcy case number on such checks; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement.  *See U.S. Trustee Guidelines*. These guidelines are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims. Considering the breadth and complexity of the Debtors' businesses and financial affairs and the sheer volume of collections, disbursements, and movement of funds through the Cash

16

Management System on a daily basis, enforcement of these provisions of the U.S. Trustee Guidelines during these Chapter 11 Cases would severely disrupt the ordinary financial operations of the Debtors by reducing efficiencies and causing unnecessary expense.

38.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter."  *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  Courts have also recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys. Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 99 F.2d 1039 (3d Cir. 1993); *see also In re BJ Servs., LLC*, Case No. 20-33627 (MI) (Bankr. S.D. Tex. July 22, 2020) (approving the debtors' continued use of existing cash management systems).  As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *See Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

39.     Requiring the Debtors to adopt a new cash management system during these Chapter 11 Cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations.  The Cash Management System provides the Debtors with the ability to, among other things, quickly assess the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a

centralized method of coordinating the collection and movement of funds. Maintaining the current Cash Management System will facilitate the Debtors' smooth transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses and minimizing delays in paying postpetition debts. Maintaining the current Cash Management System will also allow the Debtors' treasury and accounting employees to focus on their daily responsibilities as opposed to reconstructing the Cash Management System.

40.    Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including the Bank Accounts and continuing Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that Debtor entities will not make unauthorized payments on account of prepetition obligations. Specifically, with the assistance of their advisors, the Debtors have implemented internal protocols that prohibit payments on account of prepetition debts, including prepetition accounts payable payments, without prior approval of the Debtors' treasury department. In light of such protective measures, maintaining the Cash Management System is in the best interests of the Debtors' estates and creditors.

## II.    Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted.

41.    The Debtors request that the Court authorize the Cash Management Banks to receive, process, honor, and pay, to the extent funds are available in each applicable Bank Account, any and all checks, electronic fund transfer, credit card payments, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic fund transfers, credit card payments, or ACH payments are dated prior or subsequent to the Petition Date. The Debtors also request that, to the

extent a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. Such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise. Considering the breadth and complexity of their operations, the Debtors need to conduct transactions by checks, wire transfers, ACH transfers, and other debits or electronic means. If the Debtors are denied the opportunity to conduct transactions by checks, wire transfers, ACH transfers, other debits or electronic means, or other methods used in the ordinary course of business, the Debtors likely would have difficulty performing on their contracts and the Debtors' business operations would be disrupted unnecessarily, burdening the Debtors and their creditors with additional costs.

III.    **The Debtors Should Be Granted Authority to Use Existing Business Forms and Books and Records.**

42.    The Debtors request that they be authorized to continue to use their Business Forms and Books and Records, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession. Given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date. Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing forms such as checks and invoices would be an unnecessary additional expense and unduly burdensome.

43.     The Debtors should be permitted to maintain their existing Books and Records rather than open a new set as required under the U.S. Trustee Guidelines.  The Debtors use a sophisticated recordkeeping system that enables them to consolidate their Books and Records for financial reporting purposes while tracking operations and results of individual entities across their corporate structure.  Continued use of the Debtors' current Books and Records will maximize efficiency and reduce administrative strain in these Chapter 11 Cases.

## IV.    Payment of Bank Fees and Prepetition Obligations Related to the Bank Accounts Will Facilitate a Smooth Transition into Chapter 11 and Benefit the Estates.

44.     The Debtors believe that they have authority to pay prepetition Bank Fees and continue satisfying these obligations as they arise during these Chapter 11 Cases because such payments are ordinary course.  *See* 11 U.S.C. § 363(c) ("If the business of the debtor is authorized to be operated under section . . . 1108 . . . and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.").  However, this Motion seeks authority to pay such fees and satisfy such obligations out of an abundance of caution and in the event that payment of these obligations is not considered ordinary course.

45.     Section 363(b) of the Bankruptcy Code permits a debtor to, subject to court approval, pay prepetition obligations where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor in possession to 'protect and preserve the estate, including an operating

business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

46.     Under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *see also In re CoServ*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay pre-petition claims). The above-referenced sections of the Bankruptcy Code have been interpreted to authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g.*, *In re CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

47.     The Debtors request authority to pay prepetition Bank Fees as they become due in the ordinary course. Authority to make such payments is necessary to the Debtors' operations, which are predicated on an uninterrupted flow of funds between Bank Accounts. If the Debtors do not pay their Bank Fees, then their relationships with the Cash Management Banks may be materially damaged. Further, the Debtors' management and advisors may also be forced to spend time and resources on unnecessary disputes with the Cash Management Banks. Any interference or delay in any of these programs is unnecessary and unduly burdensome.

**V.     The Court Should Authorize the Debtors to Continue Engaging in Postpetition Intercompany Transactions and Grant Administrative Expense Status to Postpetition Intercompany Transactions Among the Debtors and Non-Debtor Affiliates.**

48.     Allowing the Debtors to engage in postpetition Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to enter

into such postpetition Intercompany Transactions.[6]   Postpetition Intercompany Transactions arising in the ordinary course are authorized as a matter of law pursuant to section 363(c)(1) of the Bankruptcy Code for which no additional relief is required.  Further, as discussed herein, the Debtors will continue to maintain records of postpetition Intercompany Transactions, including records of all current intercompany accounts receivables and payables, to facilitate parties' access to information where reasonably requested.

49.     The Debtors submit that the relief requested herein fairly balances the Debtors' needs to facilitate the ordinary course operation of their business and effectuate their operational restructuring, minimize disruption, and preserve value, on the one hand, with the interests of their stakeholders and transparency, on the other hand.  The Intercompany Transactions are essential components of the Debtors' operations and the postpetition Intercompany Transactions will result in efficiencies and cost savings to the Debtors, maximizing the value of the Debtors' estates.  Any interruption of the Intercompany Transactions—including failure to advance or reimburse payments related to the Debtors' businesses and operational restructuring—would severely disrupt the Debtors' global operations and result in great harm to the Debtors' estates to the detriment of their stakeholders.

50.     To ensure that the Debtors' creditors are sufficiently protected, the Debtors request that each payment (or other transfer of cash, whether to or from the Debtors) from a Debtor to another Debtor under any postpetition Intercompany Transaction be granted administrative expense status under section 503(b) of the Bankruptcy Code.[7]  This relief will ensure that each

---

[6]     The Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe the postpetition Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code, and thus do not require the Court's approval.

[7]     Notwithstanding the administrative expense status requested for the Intercompany Transactions between and among Debtors, each Debtor reserves the right to dispute any Intercompany Transaction (or payment made on

entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtors' respective creditors. Moreover, such relief is consistent with that granted by Courts in this jurisdiction in similarly situated matters—particularly where, as here, the debtor operates a global enterprise and an integrated cash management system. *See e.g.*, *In re Cineworld Group PLC*, No. 22-90168 (MI) (Bankr. S.D. Tex. Nov. 14, 2022) (according administrative expense status to all authorized postpetition [i]ntercompany [t]ransactions); *In re Pipeline Health System, LLC*, No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 27, 2022) (same); *In re Altera Infrastructure, L.P.*, No. 22-90130 (MI) (Bankr. S.D. Tex. Oct. 7, 2022) (same); *In re Katerra Inc.*, No. 21-31861 (DRJ) (Bankr. S.D. Tex., July 13, 2021) (same); *In re Washington Prime Group*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 8, 2021) (same).

## Emergency Consideration

51.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm. The Debtors have satisfied the "immediate and irreparable harm" standard and request that the Court approve the Motion on an emergency basis.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

52.    The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations

---

account of an Intercompany Transaction) on any ground, including the methodology for calculation of such transaction or payment, and to claw back or avoid such transactions and/or payments.

and anticipated access to cash collateral and debtor in possession financing.  Under the Debtors'

existing cash management system, the Debtors can readily identify checks or wire transfer requests

as relating to an authorized payment in respect of the relief requested herein.  Checks or wire

transfer requests that are not related to authorized payments will not be honored inadvertently.

The Debtors request that the Court authorize all applicable financial institutions, when requested

by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in

respect of the relief requested herein.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

53.     The Debtors request that the Court enter an order providing that notice of the relief

requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to

exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

54.     Nothing contained herein or any actions taken pursuant to such relief requested is

intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of

any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy

law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any

grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any

particular claim is of a type specified or defined in this Motion or any order granting the relief

requested by this Motion or a finding that any particular claim is an administrative expense claim

or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement,

contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the

validity, priority, enforceability, or perfection of any lien on, security interest in, or other

encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any

other party in interest's, rights under the Bankruptcy Code or any other applicable law; or

24

(h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### **Notice**

55.     The Debtors have provided notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Consenting Term Lenders; (d) counsel to the Consenting Revolving Lenders; (e) counsel to the DIP Lender; (f) counsel to the agents under the Debtors' postpetition credit facilities and DIP credit facility; (g) the state attorneys general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k)  other governmental agencies having a regulatory or statutory interest in these cases; (l) Cash Management Banks; (m) Payment Facilitators, (n) Amex, and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no other or further notice is required.

The Debtors request that the Court enter the Interim Order and the Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  May 23, 2023

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email:          mcavenaugh@jw.com
                    jwertz@jw.com
                    mstull@jw.com
                    vargeroplos@jw.com


*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL
LLP**
Patrick J. Nash, P.C. (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
Jeffrey T. Michalik (*pro hac vice* pending)
Yusuf Salloum (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                     john.luze@kirkland.com
                     jeff.michalik@kirkland.com
                     yusuf.salloum@kirkland.com


*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

### Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/  Matthew D. Cavenaugh
Matthew D. Cavenaugh

### Certificate of Service

I certify that on May 23, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/  Matthew D. Cavenaugh
Matthew D. Cavenaugh

## **Exhibit A**

**Bank Accounts**[1]

[*See Attached*]

---

[1]     For the avoidance of doubt, all of the Debtor Bank Accounts are maintained in U.S. dollars.

Bank Account Summary

| Acct. # | Num. | Bank | Company | Abbrev Entity | Debtor / Non-Debtor | Restricted/ Unrestricted | Type | [2] Primary activity | Bank Account Name/Description | Entity / Bank / Acct # |
|---|---|---|---|---|---|---|---|---|---|---|
| **Unrestricted Debtor Accounts** | | | | | | | | | | |
| 1 | 5061 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Main Operating / Disbursements | Main AP account, Wires, ACH, Checking, Amex Corporate Card | Operating Account | HPIH Truist 5061 |
| 2 | 2234 | Bank Of America | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Disbursements | Payroll | Health Plan Intermediaries Holdings LLC - Operating Account | HPIH Bank Of America 2234 |
| 3 | 2521 | Wells Fargo | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Disbursements | Commissions Payments | Health Plan Intermediaries Holdings LLC - Commission Account | HPIH Wells Fargo 2521 |
| 4 | 2489 | Wells Fargo | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | Bank Service Charges | Health Plan Intermediaries Holdings LLC - Operating Account | HPIH Wells Fargo 2489 |
| 5 | 2047 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | Medicare Deposits - Humana | Health Plan Intermediaries Holdings LLC - Humana Direct | HPIH Truist 2047 |
| 6 | 0675 | Truist | TogetherHealth Insurance | TogetherHealth Insurance | Debtor | Unrestricted | Deposits | Medicare Deposits - THI | TogetherHealth Insurance | TogetherHealth Insurance Truist 0675 |
| 7 | 0683 | Truist | TogetherHealth PAP | TogetherHealth PAP | Debtor | Unrestricted | Deposits | Medicare Deposits - THP | TogetherHealth PAP | TogetherHealth PAP Truist 0683 |
| 8 | 1269 | Truist | Total Insurance Brokers | Total Insurance Brokers | Debtor | Unrestricted | Deposits | Medicare Deposits - TIB | Total Insurance Brokers | Total Insurance Brokers Truist 1269 |
| 9 | 3154 | Wells Fargo | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | Merchant Account - Receives ACH Payments for A&H | Health Plan Intermediaries Holdings LLC | HPIH Wells Fargo 3154 |
| 10 | 6338 | Woodforest | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | Merchant Account - Receives Credit Card Payments for A&H | Health Plan Intermediaries Holdings LLC | HPIH Woodforest 6338 |
| 11 | 1580 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | Merchant Account - Refunds & Recisions (R&R), Receives Credit Card Payments for A& | Health Plan Intermediaries Holdings LLC - HII Premium Trust | HPIH Truist 1580 |
| 12 | 1572 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity | Health Plan Intermediaries Holdings LLC - Commission Account | HPIH Truist 1572 |
| 13 | 2497 | Wells Fargo | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | A&H Premium Deposits | Health Plan Intermediaries Holdings LLC - HII Premium Trust | HPIH Wells Fargo 2497 |
| 14 | 1926 | Bank Of America | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity, BOA Bank Service Charges | Health Plan Intermediaries Holdings LLC - Premium | HPIH Bank Of America 1926 |
| 15 | 8058 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Unrestricted | Other / Money Market Account | Liquidity Account | Health Plan Intermediaries Holdings LLC - Liquidity Account | HPIH Truist 8058 |
| 16 | 3664 | Wells Fargo | American Service Insurance Agency | ASIA | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity | American Service Insurance Agency | ASIA Wells Fargo 3664 |
| 17 | 1549 | Truist | American Service Insurance Agency | ASIA | Debtor | Unrestricted | Deposits | ZBA Account | American Service Insurance Agency | ASIA Truist 1549 |
| 18 | 5279 | Truist | Daylight Beta Parent Company | Daylight Beta Parent Company | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity | Daylight Beta Parent Company | Daylight Beta Parent Company Truist 5279 |
| 19 | 7184 | Wells Fargo | HealthPocket Inc | HP | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity | HealthPocket Inc | HP Wells Fargo 7184 |
| 20 | 1556 | Truist | HealthPocket Inc | HP | Debtor | Unrestricted | Deposits | ZBA Account | HealthPocket Inc | HP Truist 1556 |
| 21 | 2315 | Wells Fargo | Insurance Center for Excellence LLC | ICE | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity | Insurance Center for Excellence LLC | ICE Wells Fargo 2315 |
| 22 | 2323 | Wells Fargo | Sunrise Health Plans LLC | SHP | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity | Sunrise Health Plans LLC - Operating | SHP Wells Fargo 2323 |
| 23 | 0667 | Truist | RX Helpline, LLC | TogetherHealth RX | Debtor | Unrestricted | Deposits | Minimal Deposits/Activity | TogetherHealth RX | TogetherHealth RX Truist 0667 |
| **Restricted Debtor Accounts** | | | | | | | | | | |
| 24 | 0279 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Pan American | HPIH Truist 0279 |
| 25 | 0345 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Aspen Premium Trust | HPIH Truist 0345 |
| 26 | 0875 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Inactive | Health Plan Intermediaries Holdings LLC - SASid | HPIH Truist 0875 |
| 27 | 1046 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Washington National | HPIH Truist 1046 |
| 28 | 1598 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - CIGNA Premium | HPIH Truist 1598 |
| 29 | 1606 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Companion Life Premium | HPIH Truist 1606 |
| 30 | 1614 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Amalgamated Premium | HPIH Truist 1614 |
| 31 | 1630 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Humana Premium | HPIH Truist 1630 |
| 32 | 1648 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - SLAICO | HPIH Truist 1648 |
| 33 | 1655 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Ally Re Premium | HPIH Truist 1655 |
| 34 | 1663 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Inactive | Health Plan Intermediaries Holdings LLC - Rx Advocacy Premium (Unallocated Restricted Premium) | HPIH Truist 1663 |
| 35 | 1671 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - USA Dental Premium | HPIH Truist 1671 |
| 36 | 1689 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - GA Premium Trust | HPIH Truist 1689 |
| 37 | 1697 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - GTL Premium | HPIH Truist 1697 |
| 38 | 1705 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Inactive | Health Plan Intermediaries Holdings LLC - Nationwide Premium | HPIH Truist 1705 |
| 39 | 1713 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Chubb Premium | HPIH Truist 1713 |
| 40 | 1721 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Patriot Premium | HPIH Truist 1721 |
| 41 | 1739 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Lifeshield Premium | HPIH Truist 1739 |
| 42 | 1747 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - GTL Premium | HPIH Truist 1747 |
| 43 | 1754 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Everest Premium | HPIH Truist 1754 |
| 44 | 4016 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Commissions to Third Party (Now being sent to FTC) | Health Plan Intermediaries Holdings LLC - HBO/Simple Health | HPIH Truist 4016 |
| 45 | 5071 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - Benefytt Technologies on Behalf of USFIC Premium | HPIH Truist 5071 |
| 46 | 7687 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Inactive | Health Plan Intermediaries Holdings LLC - United Concordia | HPIH Truist 7687 |
| 47 | 8146 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Remit Premiums to Carriers | Health Plan Intermediaries Holdings LLC - HPIH Axis Prime Health | HPIH Truist 8146 |
| 48 | 9584 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Inactive | Health Plan Intermediaries Holdings LLC - Liberty Mutual | HPIH Truist 9584 |
| 49 | 1695 | Truist | Health Plan Intermediaries Holdings LLC | HPIH | Debtor | Restricted | Premium Trust Account | Inactive | Health Plan Intermediaries Holdings LLC - USFIC Commission | HPIH Truist 1695 |
| **Other Accounts** | | | | | | | | | | |
| 50 | 2247 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - HPIH Commission Account | HPIH Bank of America 2247 |
| 51 | 2250 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Great American Premium Trust | HPIH Bank of America 2250 |
| 52 | 2263 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Companion Life Premium Trust | HPIH Bank of America 2263 |
| 53 | 2276 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Cigna Premium Trust | HPIH Bank of America 2276 |
| 54 | 2289 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Humana Premium Trust | HPIH Bank of America 2289 |
| 55 | 2292 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Ally Re Premium Trust | HPIH Bank of America 2292 |
| 56 | 2302 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - USA Dental Premium Trust | HPIH Bank of America 2302 |
| 57 | 2315 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - SLAICO Premium Trust | HPIH Bank of America 2315 |
| 58 | 2328 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Amalgamated Premium Trust | HPIH Bank of America 2328 |
| 59 | 2331 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Gathered Care Premium Trust | HPIH Bank of America 2331 |
| 60 | 2344 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Nationwide Premium Trust | HPIH Bank of America 2344 |
| 61 | 2357 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Chubb Premium Trust | HPIH Bank of America 2357 |
| 62 | 2360 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings LLC/Unallocated Restricted Premium | HPIH Bank of America 2360 |
| 63 | 2373 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - GTL Premium Trust | HPIH Bank of America 2373 |
| 64 | 2386 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Everest Premium Trust | HPIH Bank of America 2386 |
| 65 | 2399 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings/Funds Due HBO/Simple Health | HPIH Bank of America 2399 |
| 66 | 2409 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Patriot Premium Trust | HPIH Bank of America 2409 |
| 67 | 2412 | Bank of America | Health Plan Intermediaries Holdings LLC | ICE | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Lifeshield Premium Trust | HPIH Bank of America 2412 |
| 68 | 2425 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Pan American | HPIH Bank of America 2425 |
| 69 | 2438 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Axis Prime Health Premium Trust | HPIH Bank of America 2438 |
| 70 | 2441 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Aspen | HPIH Bank of America 2441 |
| 71 | 2454 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Washington National | HPIH Bank of America 2454 |
| 72 | 2467 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - United Concordia | HPIH Bank of America 2467 |
| 73 | 2470 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings - Liberty Mutual | HPIH Bank of America 2470 |
| 74 | 2483 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings LLC - Benefytt Technologies on Behalf of USFIC Premium | HPIH Bank of America 2483 |
| 75 | 0667 | Bank of America | Benefytt Reinsurance Solutions, LLC | HPIH | | Unrestricted | ZBA Account | | Benefytt Reinsurance Solutions, LLC | HPIH Bank of America 0667 |
| 76 | 6817 | Bank of America | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings | HPIH Bank of America 6817 |
| 77 | 3188 | WELLS FARGO | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | No Activity | | Health Plan Intermediaries Holdings LLC - Test account | HPIH WELLS FARGO 3188 |
| 78 | 1564 | TRUIST | Health Plan Intermediaries Holdings LLC | HPIH | | Unrestricted | ZBA Account | | Health Plan Intermediaries Holdings LLC - Payroll Account | HPIH TRUIST 1564 |

**Exhibit B**

**Cash Management Schematic**

[*See Attached*]

# Benefytt Technologies Active Banking Structure

