# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) Case No. 23-90566 (CML) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) **Re: Docket No.** \_\_\_\_\_ |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS, (B) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, AND (C) MAINTAIN EXISTING BUSINESS FORMS AND BOOKS AND RECORDS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) continue to operate their Cash Management System and maintain their existing Bank Accounts, including honoring certain prepetition obligations related thereto, (ii) continue to perform Intercompany Transactions and funding as set forth herein, and (iii) maintain existing Business Forms and Books and Records in the ordinary course of business, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.§ 157(b)(2); and this Court having found that it may

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975).  The location of the Debtors' service address is:  3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Debtors are authorized to: (a) continue using the Cash Management System as described in the Motion and honor any prepetition obligations related to the use thereof, including, but not limited to, any prefunding arrangements consistent with prepetition practice with the Cash Management Banks; (b) designate, maintain, and close any or all of their existing Bank Accounts, including, but not limited to, the Debtor Bank Accounts identified on <u>Exhibit A</u> to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Debtor Bank Accounts by all means, including checks, wire transfers, ACH transfers, and other debits or electronic means; (d) treat their prepetition Debtor Bank Accounts for all purposes as debtor in possession accounts; (e) open new debtor in possession Debtor Bank Accounts or close any existing Debtor Bank Accounts and enter into ancillary agreements related to the foregoing, subject to the terms hereof; and (f) pay the Bank Fees, including any prepetition amounts, and any ordinary course Bank Fees incurred in

connection with the Debtor Bank Accounts, and to otherwise perform their obligations under the Bank Account agreements; *provided* that in the case of each of (a) through (f), such action is taken in the ordinary course of business and consistent with prepetition practices.

2. The Debtors are authorized to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Debtor Bank Accounts existing immediately before the Petition Date, and maintain and continue using, in their present form, the Books and Records; *provided* that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor In Possession" and with respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession" within ten (10) days.

3. Section 345 of the Bankruptcy Code requiring that the Debtor Bank Accounts be maintained at U.S. Trustee authorized depositories is waived with respect to the Debtor Bank Accounts existing as of the Petition Date.

4. All Cash Management Banks at which the Debtor Bank Accounts are maintained are authorized, but not directed, to continue to service and administer the Debtor Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, consistent with prepetition practices, including prefunding arrangements, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH and other transfers issued, whether before or after the Petition Date, and drawn on the Debtor Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided that the Debtors will instruct the Cash Management Banks as to which checks, drafts, wire transfers

(excluding any wire transfers or ACH transfers that the Cash Management Banks are obligated to settle), or other items presented, issued, or drawn, shall not be honored.

5. The Debtors are authorized, but not directed, to continue to honor certain prepetition obligations related to Cash Management System and maintenance of the Debtor Bank Accounts, including to continue to honor contracts with Payment Facilitators currently in effect and modify or supplement such contracts in the ordinary course of business, and honor any obligations related to contracts with Payment Facilitators whether incurred prepetition or postpetition, on an interim basis, as they come due in the ordinary course of business and consistent with past practice without further application to or order of this Court.

6. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

7. Except as otherwise provided in this Final Order, the Cash Management Banks are authorized to charge, and the Debtors are authorized to pay, honor, or allow, prepetition and postpetition fees, costs, charges, overdrafts, dishonored or returned checks, and expenses, including the Bank Fees, and charge back returned items, whether such items were deposited prepetition or postpetition, to the Debtor Bank Accounts in the ordinary course of business and consistent with prepetition practices.  Any such postpetition fees, costs, charges, overdrafts, dishonored or returned checks, and expenses, including the Bank Fees, or charge-backs that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

8. As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Cash Management Banks.

9. The Debtors shall maintain accurate and detailed records of all transfers, including the postpetition Intercompany Transactions, in accordance with their prepetition practices, so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions. The Debtors shall make such records reasonably promptly available upon request by (i) the U.S. Trustee, (ii) any statutory committee appointed in these chapter 11 cases, (iii) counsel to the Consenting Term Lenders, (iv) counsel to the Consenting Revolving Lenders, and (v) counsel to the DIP Lender.

10. Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of the Court, agree and implement changes to the Cash Management System and procedures in the ordinary course of business.

11. The Debtors are authorized to open new bank accounts so long as (a) any such new account is with one of the Debtors' existing Cash Management Banks or with a bank that (i) is insured with the FDIC, (ii) is designated as an authorized depository by the U.S. Trustee, and (iii) agrees to be bound by the terms of this Final Order, and (b) the Debtors shall notify in writing (email sufficient) the U.S. Trustee, any statutory committee appointed in these chapter 11 cases, counsel to the Consenting Term Lenders, counsel to the Consenting Revolving Lenders, and counsel to the DIP Lender at least seven (7) days prior to opening such account; *provided*, that each account opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Interim Order, be deemed a Debtor Bank Account as if it had been listed on Exhibit A to the Motion, and the bank at which such new account is maintained shall, for purposes of this Interim Order, be deemed a Cash Management Bank.

12. Nothing contained herein shall prevent the Debtors from closing any Debtor Bank Accounts as they may deem necessary and appropriate, to the extent consistent with any orders of the Court relating thereto, and any relevant Cash Management Bank is authorized to honor the Debtors' requests to close such Debtor Bank Accounts; and the Debtors provide reasonable prior written notice of the closure of any account to (i) the U.S. Trustee, (ii) any statutory committee appointed in these chapter 11 cases, (iii) counsel to the Consenting Term Lenders, (iv) counsel to the Consenting Revolving Lenders, and (v) counsel to the DIP Lender.

13. The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business and without further order of the Court on account of (a) all checks drawn on the Debtor Bank Accounts that were cashed at the Cash Management Banks' counters or exchanged for cashier's or official checks by the payees thereof prior to the Petition Date; (b) all checks, ACH entries, or other items deposited in, or credited to, one of the Debtors' accounts with such bank prior to the Petition Date which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition and postpetition amounts outstanding, if any, owed to the Cash Management Bank as Bank Fees for the maintenance of the Cash Management System and charge back returned items to the Debtor Bank Accounts in the ordinary course.

14. The Debtors are authorized, but not directed, to continue issuing credit cards and reimbursing expenses incurred under the Credit Card Program in the ordinary course of business consistent with prepetition practices, including by paying obligations outstanding with respect thereto and applying any charges against prepetition deposits on a prepetition and postpetition basis, subject to the limitations of this Order and any other orders of this Court. The Debtors are

authorized, but not directed, to continue to use the Credit Card Program in the ordinary course of business, to honor all past and future contractual obligations under the Credit Card Program, and to make timely payments on account of charges that were made under the Credit Card Program prior to the Petition Date.

15. Section 345 of the Bankruptcy Code requiring that the Debtor Bank Accounts be maintained at U.S. Trustee authorized depositories is waived with respect to the Debtor Bank Accounts existing as of the Petition Date.

16. Notwithstanding any other provision of this Final Order, should any Cash Management Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, such Cash Management Bank shall not be deemed to be nor shall be liable to the Debtors, their estates or any other person or entity, or otherwise be in violation of this Final Order. The Cash Management Banks may rely, without a duty of inquiry, upon the failure of the Debtors to issue a stop payment order with respect to any item, whether such item is issued prepetition or postpetition, as a direction by the Debtors that such item be paid.

17. Notwithstanding anything to the contrary in this Final Order, any payment made or to be made hereunder, and any authorization herein, shall be subject to the requirements (if any) imposed on the Debtors under any order(s) of this Court approving the postpetition secured debtor in possession financing facility and the use of cash collateral (any such order, a "Financing Order"), including any documentation with respect to such financing and any budget in connection with such Financing Order. In the event of any conflict between the terms of this Final Order and

a Financing Order, the terms of the applicable Financing Order shall control (solely to the extent of such conflict).

18. All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19. Notwithstanding the relief granted herein and any actions taken pursuant to such relief, and subject to the administrative status afforded pursuant this Final Order, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

20. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

21. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

22. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

23. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2023

UNITED STATES BANKRUPTCY JUDGE