IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) ) ) | Case No. 23-90566 (CML) |
| Debtors. | ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS TO
(A) MAINTAIN AND ADMINISTER THEIR EXISTING CUSTOMER
AND PARTNER PROGRAMS AND (B) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 23, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 23, 2023, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975). The location of the Debtors' service address is: 3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Benefytt") state the following in support of this motion (this "Motion"):[2]

### Relief Requested

1. The Debtors seek entry of an order, substantially in the attached form (the "Order"), authorizing the Debtors to (a)(i) maintain and administer each of their Refund Program, the Marketing Arrangements, and the Collection Program (each as defined below) (collectively, the "Customer and Partner Programs") and (ii) honor certain related prepetition obligations on account of the Customer and Partner Programs, each on a postpetition basis in the ordinary course of business, and (b) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

---

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael DeVries, Chief Financial Officer of Benefytt Technologies, Inc. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on May 23, 2023 (the "Petition Date"). Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

2

**Background**

5.     The Debtors are a technology-driven distributor of insurance products covering Medicare-related insurance plans as well as other types of health insurance and supplemental products that operate in 44 states including Texas, New York, California, and Florida. Headquartered in Tampa, Florida and employing approximately 855 people, the Debtors develop and operate Medicare and private health insurance online marketplaces, insurance agent technology systems, and insurance policy administration platforms, as well as conduct marketing and lead generation for insurance providers.  The Debtors provide self-guided online tools for individuals to compare Medicare, private, and supplemental health insurance products; an extensive network of licensed insurance agents empowered by a technology platform to facilitate enrollments; and other insurance technology allowing agents and brokers to service their customers and manage their business seamlessly.

6.     On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated as of the date hereof.

**The Customer Programs**

7.     As further described in the First Day Declaration, the Debtors conduct their operations through a proprietary, web-based technology platform that allows for the marketing of a large and diverse portfolio of affordable insurance coverage products provided by third-party

carriers. The Debtors provide tools throughout the life cycle of third-party insurance products, from lead generation to administration of the policy. As the Debtors do not directly issue or provide insurance coverage, the Debtors' platform and businesses are similar to a market-maker in that they are focused on bringing together two intertwined customer groups to transact directly or indirectly. The Debtors' operations focus on marketing to individuals seeking insurance products which are divided into two segments based on the type of coverage marketed to individuals. One segment facilitates the marketing of Medicare-related health insurance and prescription coverage products, and the other segment facilitates the marketing of third-party private insurance products ("A&H"), such as accident and health insurance plans, short-term medical insurance plans, health benefit insurance plans, and supplemental coverage products from third-party providers (the "Partners"). Benefytt helps connect the Partners to the individuals' market through service offerings such as administration and customer relationship management platforms.

8. In light of Benefytt's market role as a technology-based connector of individuals and Partners, with this motion, the Debtors seek certain comfort to protect their crucial relationships and programs conducted in the ordinary course of business with each of their customer groups. If the Debtors were to become unable to maintain their relationships on either end consistent with historical practice, the Debtors' business model would be in serious jeopardy. Accordingly, the Debtors request that the Court authorize the Debtors to continue to perform in the ordinary course under their Refund Program, the Marketing Arrangements, and the Collection Program (each as defined below) (collectively, the "Customer and Partner Programs") on a postpetition basis consistent with prepetition practice.

**I.     Refund Program (A&H Division, Individuals Segment).**

9.     As is customary in many industries, including the Debtors' industry, in certain instances, individuals who purchase insurance coverage products through the Debtors' A&H division may request refunds or cancellations for various reasons either telephonically or online. The Debtors' have a policy to process the cancellation and refund requests of individuals who purchase coverage products through Benefytt's A&H division within the first 30 days of purchase (the "Refund Program").  In administering the Refund Program, the Debtors process such refunds ("Refunds") through the same method of payment received from the applicable individual.  While not common, the Debtors do regularly process Refund requests in accordance with the Refund Program.

10.     The Debtors believe the Refund Program is critical to maintaining relationships with individuals.  If the Debtors were unable to administer Refunds or were required to materially alter their Refund Program, there is a likelihood that individuals would have less confidence in their transactions with Benefytt's A&H division (or in the Debtors' platform or marketing generally) and come to view transactions with the Debtors as closer to final sales of coverage products, many of which have one-year terms and monthly premiums.  If this dynamic were to occur, the Debtors believe it may have the effect of cooling not only purchases of third-party policies through the A&H division but also the number of interactions individuals may have with the platform generally, each to the detriment of the Debtors' estates.  The Debtors do not believe they owe any outstanding amounts under the Refund Program as of the Petition Date.  The Debtors provided approximately $20,000 in Refunds per month in the three months prior to the Petition Date and, in the last twelve months, approximately $240,000 in the aggregate.  Accordingly, the Debtors request that the Court authorize the Debtors to continue to administer the Refund Programs on a postpetition basis consistent with prepetition practice.

**II.     The Marketing Arrangements with Carrier Partners.**

11.     In the ordinary course of business, Benefytt has certain crucial contract arrangements with its Partners whereby Benefytt performs certain marketing and provides certain relationship-building services to individuals (the "<u>Marketing Arrangements</u>").  As further described in the First Day Declaration, in accordance with the terms of each Marketing Arrangement, the Debtors may provide marketing services in forms such as direct mail, telephone calls and support, television and radio marketing, social media marketing, and other types of e-marketing such as a mobile application, landing pages, online comparison tools and search engines.  The mix of marketing services provided by Benefytt to each Partner varies according to the terms of each Marketing Arrangement, which reflect the goals of the applicable Partner.

12.     In a typical Marketing Arrangement (but not all), the Partner pays a quarterly marketing development fund to the Debtors for the marketing work performed by the Debtors that quarter (such payment, the "<u>MDF Payment</u>").  The Debtors generally collect a set MDF Payment in advance of the start of the period in which the marketing services are to be performed for the applicable Partner, though in some instances a Partner may pay an MDF Payment in arrears.  In 2022, the Debtors received MDF Payments in the aggregate of approximately $36.6 million.

13.     At the end of each quarter, the MDF Payment is subject to an informal reconciliation process between the Debtors and the applicable Partner.  As there are no minimum performance requirements and the Debtors have no contractual obligation to pay back any balance on the MDF Payments owing to the Partners, the informal reconciliation process flows from the Debtors' actual performance in a given period relative to the sales estimate provided to the Partner.

14.     The Debtors believe that continuing to administer the Marketing Arrangements on a postpetition basis is critical to maintaining relationships with Partners and, in turn, inures to the benefit of the Debtors' estates.

**III.     The Collection Program (A&H Division, Individuals Segment).**

15.     In the ordinary course of conducting business under the A&H division, the Debtors have historically operated a certain collection process between the individuals and the A&H Partners.  In accordance with certain agreements with the A&H Partners, when an individual purchases an A&H insurance product through the Debtors' platform, rather than the A&H Partner collecting payment from the individual, the Debtors collect an all-in amount from the individual owing on account of the purchased policy, whether actually owing to the applicable Partner or to the Debtors (the "Collection Program"). This Collection Program has always been a part of the Debtors' business model.  The Debtors collect from the individuals the full amount of the applicable risk premiums on a monthly basis over the term of the applicable policy.  The Debtors accrue certain earnings on account of the collection of such full amounts, in accordance with the terms of the Debtors' agreements with each A&H Partner.

16.     Those collected funds enter into and move throughout the Debtors' cash management system as further described in the Debtors' cash management motion filed contemporaneously herewith.  The Debtors regularly remit the portion of the applicable premium owing to the applicable A&H Partner on a monthly basis, with the remaining portion of the applicable premium representing the Debtors' earnings.

17.     As of the Petition Date, the Debtors believe they owe approximately $900,000 to A&H Partners on account of balances owed under the Collection Program.  The Debtors believe that continuing to administer the Collection Program on a postpetition basis is critical to

maintaining relationships with A&H Partners and, in turn, inures to the benefit of the Debtors' estates.

**Basis for Relief**

I.   **Continuing to Honor the Customer and Partner Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363 of the Bankruptcy Code and Is in the Best Interests of the Debtors' Estates.**

18.   Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing.  Consequently, the postpetition continuation, renewal, and replacement of obligations under the Customer and Partner Programs in the ordinary course of business is likely permitted by sections 363(c), 1107(a), and 1108 of the Bankruptcy Code, without further application to the Court.  Out of an abundance of caution, however, the Debtors request the relief described herein.

19.   Courts have generally acknowledged that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See*, *e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

20.   Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).

21.   In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Under section 105(a) of the

Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

22. The Court can authorize the Debtors to continue the Customer and Partner Programs and satisfy prepetition obligations related thereto pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. There is no doubt that continuing to administer the Customer and Partner Programs without interruption during the pendency of these chapter 11 cases is critical to preserving the value of the Debtors' estates. Individuals and Partners alike expect and rely on the Customer and Partner Programs and may not continue supporting the Debtors' businesses to the same degree if the Customer and Partner Programs are discontinued, interrupted, or modified.

23. The substantial benefit conferred on the Debtors' estates by the Customer and Partner Programs warrants the authority to honor the Customer and Partner Programs and any of the Debtors' obligations related thereto. The Debtors request the authority to continue administering their Customer and Partner Programs and honor prepetition obligations related thereto in the ordinary course of business consistent with past practices on a postpetition basis.

### **Emergency Consideration**

24. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid

9

immediate and irreparable harm." Failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm. The Debtors have satisfied the "immediate and irreparable harm" standard and request that the Court approve the Motion on an emergency basis. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm.

### **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

25. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. The Debtors request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

26. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### **Reservation of Rights**

27. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of

any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **Notice**

28.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Consenting Term Lenders; (d) counsel to the Consenting Revolving Lenders; (e) counsel to the DIP Lender; (f) counsel to the agents under the Debtors' postpetition credit facilities and DIP credit facility; (g) the state attorneys general for each of the states in which the Debtors operate; (h) the United States Attorney's Office

for the Southern District of Texas; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) other governmental agencies having a regulatory or statutory interest in these cases; (l) the Partners; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no other or further notice is required.

The Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  May 23, 2023

/s/  *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, P.C. (*pro hac vice* pending) |
| J. Machir Stull (TX Bar No. 24070697) | John R. Luze (*pro hac vice* pending) |
| Victoria N. Argeroplos (TX Bar No. 24105799) | Jeffrey T. Michalik (*pro hac vice* pending) |
| 1401 McKinney Street, Suite 1900 | Yusuf Salloum (*pro hac vice* pending) |
| Houston, TX 77010 | 300 North LaSalle Street |
| Telephone:   (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile:    (713) 752-4221 | Telephone:   (312) 862-2000 |
| Email:         mcavenaugh@jw.com | Facsimile:    (312) 862-2200 |
|                     jwertz@jw.com | Email:         patrick.nash@kirkland.com |
|                     mstull@jw.com |                     john.luze@kirkland.com |
|                     vargeroplos@jw.com |                     jeff.michalik@kirkland.com |
| |                     yusuf.salloum@kirkland.com |
| *Proposed Co-Counsel to the Debtors* | *Proposed Co-Counsel to the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**Certificate of Service**

I certify that on May 23, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh