IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) ) ) | Case No. 23-90566 (CML) |
| Debtors. | ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

### DEBTORS' <u>EMERGENCY</u> MOTION
### FOR ENTRY OF INTERIM AND FINAL ORDERS
### (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION
### CLAIMS OF CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 23, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 23, 2023, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975). The location of the Debtors' service address is: 3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

### Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the attached forms (respectively, the "Interim Order" and "Final Order"), (a) authorizing the Debtors to pay Critical Vendor Claims (as defined herein) in an amount not to exceed $2.5 million, and (b) granting related relief. The Debtors request that the Court schedule a final hearing within approximately twenty-one days after the commencement of these chapter 11 cases to consider entry of the Final Order.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363, 503(b), 1107(a), 1108, and 1129 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

---

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael DeVries, Chief Financial Officer of Benefytt Technologies, Inc. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on May 23, 2023 (the "Petition Date"). Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

2

**Background**

5.     The Debtors are a technology-driven distributor of insurance products covering Medicare-related insurance plans as well as other types of health insurance and supplemental products that operate in 44 states including Texas, New York, California, and Florida. Headquartered in Tampa, Florida and employing approximately 855 people, the Debtors develop and operate Medicare and private health insurance online marketplaces, insurance agent technology systems, and insurance policy administration platforms, as well as conduct marketing and lead generation for insurance providers. The Debtors provide self-guided online tools for individuals to compare Medicare, private, and supplemental health insurance products; an extensive network of licensed insurance agents empowered by a technology platform to facilitate enrollments; and other insurance technology allowing agents and brokers to service their customers and manage their business seamlessly.

6.     On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated as of the date hereof.

**Overview of the Debtors' Prepetition Claims**

7.     In the ordinary course of business, the Debtors engage a number of providers for many of the critical services the Debtors require to run their operations and service their businesses (the "Critical Vendors"). Each of the Critical Vendors are irreplaceable due to providing

3

specialized technical service with expertise specific to the Debtors' operations, equipment, and technological infrastructure. These Critical Vendors are essential to Debtors' activities, which include, among other things, the operation and development of health insurance marketplaces, agent technology systems, and insurance policy administration platforms.

**I.      Critical Vendors.**

8. After an extensive review and analysis of the Debtors' vendors, the Debtors and their advisors identified the Critical Vendors that supply services vital to the Debtors' operations.[3] The Debtors rely on the Critical Vendors to operate their businesses of developing and operating technology platforms to facilitate the marketing and sales of insurance-related products and services. The Critical Vendors include certain lead generation vendors that are essential to the Debtors' core activity of conducting marketing and lead generation for insurance providers. The Debtors depend on the Critical Vendors' timely provision of specialized services to enable the continued operation of the Debtors' technological internet-based platforms and tools. In addition to technology and software-related agreements for the use of platforms for sale quotes, cloud hosting and call centers, the Debtors occasionally entered into certain insertion orders with some Critical Vendors to operate their lead generation activity. Given the sophisticated nature of the Debtors' businesses, the products and services can only be obtained from a limited number of highly-specialized providers that likely would be impossible to replace or could only be replaced at substantially higher costs and at significant delay to the Debtors at this critical juncture in these chapter 11 cases.

---

[3] For the avoidance of doubt, no affiliates of the Debtors shall be considered a Critical Vendor to be paid pursuant to the terms of the Order.

9. The Critical Vendors provide the Debtors with services on trade terms that create considerable liquidity for the Debtors' businesses and maintaining these trade terms is critical to the Debtors' success and ability to build their inventory in order to ensure sufficient supply to meet customer demand. Without these Critical Vendors' services and agreement to continue an ordinary course relationship, the Debtors cannot operate a profitable, successful business. Certain Critical Vendors could have the ability to sell leads of higher quality to the Debtors' competitors, thereby jeopardizing the Debtors' businesses and estates. Any interruption in these services—however brief—would disrupt the Debtors' operations and could potentially cause irreparable harm to their businesses, goodwill, employees, customer base, and market share. In addition, certain Critical Vendors are small, family-owned or independent businesses whose liquidity could be highly impacted if the Debtors do not maintain an ordinary course relationship with them. After a thorough analysis of options, the Debtors believe that such harm likely would far outweigh the cost of payment of the Critical Vendor Claims (as defined herein). The requested relief will also allow the Debtors to preserve stakeholder value by paying the prepetition claims of certain counterparties that are critical to the Debtors' business enterprise.

**II.    The Debtors' Process for Identifying Critical Vendors.**

10. Recognizing that payment of prepetition amounts owing to Critical Vendors is extraordinary relief, the Debtors, with the assistance of their advisors, reviewed their books and records, consulted operations management and purchasing personnel, reviewed contracts and supply agreements, and analyzed applicable laws, regulations, and historical practices to identify the limited number of vendors that are critical to the Debtors' go-forward business—the loss of which could materially harm their businesses, shrink their market share, reduce their enterprise value, and impair going-concern viability.

11. In identifying the Critical Vendors, the Debtors examined each of their vendor relationships with the following criteria in mind:

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining services from alternative sources;

- whether a vendor is a sole-source, limited-source, or high-volume supplier of services critical to the Debtors' business operations;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide requisite volumes of similar services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor;

- the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these chapter 11 cases;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to [hold goods owned by the Debtors, or refuse to ship inventory or to] provide critical services on a postpetition basis;

- the location and nationality of the vendor; and

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

12. The Debtors and their advisors also examined the health of each vendor relationship, their familiarity with the chapter 11 process, and the extent to which each vendor's prepetition claims could be satisfied elsewhere in the chapter 11 process.

13. The Debtors balanced the need to preserve relationships with the vendors most important to the go-forward business with the need to limit the expenditure of estate resources. The Debtors have undertaken a lengthy process to ensure that the Critical Vendors truly represent

6

those vendors that are vital to the Debtors' go-forward operations. The Debtors will only make payments that they determine are necessary and value-maximizing. The amount of relief requested related to Critical Vendor Claims in this Motion represents only an estimated 12% percent of the Debtors' estimated outstanding trade payables as of the Petition Date. Paying targeted Critical Vendors renders a benefit to the Debtors' estates both monetarily and operationally by preserving liquidity, preventing additional operational disruption, and enabling the Debtors to operate smoothly during the chapter 11 cases.

**II.     Customary Trade Terms.**

14.     The Debtors will condition payment of the Critical Vendor Claims on each holder's agreement (a) to continue supplying services on terms that are at least as favorable as those in place during the twelve (12) months prior to the Petition Date or are otherwise acceptable to the Debtors in light of customary industry practices (the "Customary Trade Terms") and (b) that, while these Chapter 11 Cases are pending, the vendors are not permitted to cancel any contract, agreement or arrangement pursuant to which they provide goods or services; *provided* that the Debtors continue to pay for such goods and services are not otherwise in breach of such contract, agreement or arrangement. Such agreement must be provided to the Debtors in writing in advance of any payment on a Critical Vendor Claim and may be agreed to via email between the vendor and the Debtors (or their counsel).

15.     The Debtors seek authority to require more favorable trade terms from any Critical Vendor as a condition to payment of any prepetition claim. The Debtors have designated a core group of executives, advisors, and employees who have experience in the Debtors' businesses and in the reorganization process to review, assess, and potentially recommend any payment on account of a Critical Vendor Claim.

16. The Debtors also request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise, and (d) the Debtors may pursue any other remedy available to them under applicable law or any executed trade agreement with such party.

## Basis for Relief

### I. The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.

17. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors, where necessary to protect and preserve the estate. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *see also In re Scotia Dev., LLC*, No. 07-20027, 2007 WL 2788840, at *2 (Bankr. S.D. Tex. Sept. 21, 2007) (outlining the factors for when a critical vendor payment is necessary). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

18. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, at *175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Under section 1107(a) of the Bankruptcy Code, a debtor in possession is given the same rights and powers as a trustee appointed in a bankruptcy case, including the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also* 11 U.S.C. § 1108 ("[T]he trustee may operate the debtor's business."). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *In re CoServ, L.L.C.*, 273 B.R. at 497 ("These are simply examples of claims that may require satisfaction for the debtor in possession to perform its fiduciary obligations. In such instances, it is only logical that the bankruptcy court be able to use Section 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

19. No provision of the Bankruptcy Code expressly prohibits the postpetition payment of prepetition trade claims. The above-referenced sections of the Bankruptcy Code authorize such payments when the payments are critical to preserving the going-concern value of a debtor's estate, as is the case here.

20. There are instances in which debtors in possession can fulfill their fiduciary duties "only . . . by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497. The

*CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id*. at 498. Courts in the Fifth Circuit, including the Bankruptcy Court for the Southern District of Texas, have followed the *CoServ* court's three-part test to determine whether a prepetition claim of a "critical vendor" may be paid outside of the plan process on a postpetition basis:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*In re CoServ*, 273 B.R. at 498.

21. The Debtors require a steady stream of goods and services from their Critical Vendors to maintain operational stability as the Debtors transition into chapter 11. Without the goods and services provided by the Critical Vendors, the Debtors may be forced to cease or substantially curtail operations enterprise wide while they search for substitute vendors and service providers, which could cause the Debtors to forego existing favorable trade terms.

22. Any disruption to the Debtors' business operations could result in a significant loss of operational efficiency, decreasing the value of these businesses, which would impair stakeholder value at this critical juncture in these chapter 11 cases. It is appropriate for the Court to authorize the Debtors to satisfy the Critical Vendor Claims as set forth herein.

23. The resulting harm to the Debtors' estates far outweighs the cost associated with paying a portion of the Debtors' prepetition obligations to the Critical Vendors. The Debtors' other creditors will be no worse off, and in fact will fare far better, if the Debtors are empowered

to negotiate such payments to achieve a smooth transition into bankruptcy with minimal disruption to their operations. The requested relief will help maximize the value of their estates.

II. **Payment of the Critical Vendor Claims and the Relief Sought Herein is a Sound Exercise of the Debtors' Business Judgment and Necessary to Preserve the Value of the Estates.**

24. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").

25. Section 105(a) of the Bankruptcy Code provides that a court "may issue any order process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). Courts apply section 105(a) pursuant to the "doctrine of necessity," which functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ, L.L.C.*, 273 B.R. 487, 496–97 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity").

26. The doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). Each of the Critical Vendors are indispensable to

the operation of the Debtors' assets. It is imperative that the Debtors have the authority to pay all of the Critical Vendors if determined necessary to preserve the go-forward success of the Debtors' businesses. The relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code.

## Emergency Consideration

27. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm. The Debtors have satisfied the "immediate and irreparable harm" standard and request that the Court approve the Motion on an emergency basis.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

28. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. The Debtors request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

29. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

30. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

31.     The Debtors have provided notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Consenting Term Lenders; (d) counsel to the Consenting Revolving Lenders; (e) counsel to the DIP Lender; (f) counsel to the agents under the Debtors' postpetition credit facilities and DIP credit facility; (g) the state attorneys general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k)  other governmental agencies having a regulatory or statutory interest in these cases; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no other or further notice is required.

The Debtors request that the Court enter the Interim Order and the Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  May 23, 2023

/s/  *Matthew D. Cavenaugh*

| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
|---|---|
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, P.C. (*pro hac vice* pending) |
| J. Machir Stull (TX Bar No. 24070697) | John R. Luze (*pro hac vice* pending) |
| Victoria N. Argeroplos (TX Bar No. 24105799) | Jeffrey T. Michalik (*pro hac vice* pending) |
| 1401 McKinney Street, Suite 1900 | Yusuf Salloum (*pro hac vice* pending) |
| Houston, TX 77010 | 300 North LaSalle Street |
| Telephone: (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile: (713) 752-4221 | Telephone:    (312) 862-2000 |
| Email: mcavenaugh@jw.com | Facsimile:    (312) 862-2200 |
|         jwertz@jw.com | Email:          patrick.nash@kirkland.com |
|         mstull@jw.com |                     john.luze@kirkland.com |
|         vargeroplos@jw.com |                     jeff.michalik@kirkland.com |
|  |                     yusuf.salloum@kirkland.com |

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**Certificate of Service**

I certify that on May 23, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh