**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) ) ) | Case No. 23-90566 (CML) |
| Debtors. | ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED
INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS
RELATED THERETO, (B) RENEW, SUPPLEMENT, AMEND, EXTEND, OR
PURCHASE INSURANCE POLICIES, (C) CONTINUE TO PAY BROKERAGE FEES,
AND (D) MAINTAIN THE SURETY BONDS, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 23, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 23, 2023, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance"**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975). The location of the Debtors' service address is: 3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

> link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

### Relief Requested

1. The Debtors seek entry of an order, substantially in the attached form (the "Order"), (a) authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto in the ordinary course of business,[3] (ii) renew, supplement, amend, extend, or purchase insurance coverage in the ordinary course of business on a postpetition basis, (iii) satisfy payment of prepetition obligations on account of, and continue to pay, Brokerage Fees (as defined herein) in the ordinary course, (iv) maintain the Surety Bonds (as defined herein) on an uninterrupted basis and satisfy related prepetition obligations in the ordinary course of business; and (b) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b). The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael DeVries, Chief Financial Officer of Benefytt Technologies, Inc. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on May 23, 2023 (the "Petition Date"). Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

[3] Nothing herein shall be deemed an admission of any payments due or past due under or related to any of the Insurance Policies (as defined herein).

2

4. The bases for the relief requested herein are sections 105(a), 363(b), 364(c), 503, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5. The Debtors are a technology-driven distributor of insurance products covering Medicare-related insurance plans as well as other types of health insurance and supplemental products that operate in 44 states including Texas, New York, California, and Florida. Headquartered in Tampa, Florida and employing approximately 855 people, the Debtors develop and operate Medicare and private health insurance online marketplaces, insurance agent technology systems, and insurance policy administration platforms, as well as conduct marketing and lead generation for insurance providers. The Debtors provide self-guided online tools for individuals to compare Medicare, private, and supplemental health insurance products; an extensive network of licensed insurance agents empowered by a technology platform to facilitate enrollments; and other insurance technology allowing agents and brokers to service their customers and manage their business seamlessly.

6. On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated as of the date

hereof.

## Insurance Policies and Related Payment Obligations

7. The Debtors maintain twenty-three (23) insurance policies (collectively, the "Insurance Policies")[4] administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). The Insurance Policies provide coverage for, among other things, the Debtors' property; auto; general liability; cyber liability; crime liability; kidnapping, ransom and extortion liability; employment practices liability ("EPLI"); workers' compensation; fiduciary liability; umbrella coverage; errors and omissions liability; excess liability; and directors' and officers' liability. A majority of the Insurance Policies are one year in length, except for the policy for kidnapping, ransom, and extortion liability, which is three years in length, the policy for workers' compensation, which is nine months in length, the policy for directors' and officers' liability, which is three years in length, and the policy for errors and omissions liability, which is six months in length. None of the Insurance Policies include an obligation to renew upon expiration of the applicable term. A schedule of the Insurance Policies is attached as Exhibit 1 to the Order, which is incorporated herein by reference.[5]

---

[4] The Debtors do not seek authority to maintain workers' compensation coverage and to pay prepetition amounts related thereto under this Motion, but rather request such authority as part of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Wages Motion") filed contemporaneously herewith. Exhibit 1 to the Order includes an Insurance Policy related to the Debtors' workers' compensation program, which is described in the Wages Motion. For the avoidance of doubt, this Motion asks the Court to authorize the Debtors' payment of any prepetition obligations on account of the related Insurance Policy to the extent not covered by the relief requested in the Wages Motion.

[5] The descriptions of the Insurance Policies set forth in this Motion, including on Exhibit 1 to the Order, constitute a summary only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this Motion. The Debtors request authority to honor existing Insurance Policies and renew Insurance Policies, regardless of whether the Debtors inadvertently failed to include a particular Insurance Policy on Exhibit 1 to the Order, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Order.

4

8.     Continuation and renewal of the Insurance Policies and entry into new insurance policies is essential to preserving the value of the Debtors' businesses, properties, and assets. In many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Bankruptcy Code and the requirements of the United States Trustee for Region 7 as provided in the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. The Debtors seek authorization to maintain the existing Insurance Policies, pay any prepetition obligations related thereto, and to renew, supplement, or enter into new Insurance Policies in the ordinary course of business on a postpetition basis consistent with past practice.

**I.     Insurance Premiums.**

9.     The Debtors pay insurance premiums (the "Insurance Premiums") in full upon entry into the policy. In light of many policy terms being one year or six months in length, the Debtors pay annual or semi-annual premiums depending on the Insurance Policy. All Insurance Policy premiums are paid in a single lump sum shortly after the Insurance Policy inception date. The aggregate annual amount of the Insurance Premiums for the Insurance Policies, not including applicable taxes and surcharges, deductibles, brokerage and consulting fees, or commissions, is approximately $4 million.[6]

10.     The Debtors do not believe they have any outstanding amounts in prepetition premiums on account of the Insurance Policies. Out of an abundance of caution, to ensure uninterrupted coverage under the Insurance Policies, the Debtors seek authority to pay any outstanding prepetition Insurance Premiums owed, including any third-party administration fees

---

[6]   The total amount paid for the Insurance Policies includes payment for the workers' compensation policy.

5

related thereto, and to continue to honor their obligations under the Insurance Policies as they come due in the ordinary course of business on a postpetition basis consistent with past practice.

**II.     Deductibles and Self-Insured Retentions.**

11.     Some of the Insurance Policies require the Debtors to pay a per-incident deductible (collectively, "Deductibles").  Generally, if a claim is made against such Insurance Policies, the applicable Insurance Carrier will administer the claim and make payments in connection therewith in accordance with the terms of such policy, and the Insurance Carrier will have a claim against the Debtors in the amount of the applicable Deductible.  Alternatively, certain of the Insurance Policies use self-insured retentions on a per-claim basis (collectively, the "SIRs") instead of Deductibles.  If a claim is made under such Insurance Policies, the Debtors must make payments in the first instance (whether related to defense costs or on account of the underlying liability) up to the amount of the SIR and, once the Debtors have made payments to satisfy such amount, the carrier becomes obligated to cover remaining costs in accordance with the terms of such policy.

12.     As of the Petition Date, the Debtors believe that there are no accrued but unpaid amounts outstanding on account of the Deductibles and SIRs.  The Debtors seek authority to continue the Deductibles and SIRs under the Insurance Policies, including honoring any payment obligations under the Deductibles and SIRs, in the ordinary course of business to ensure uninterrupted coverage thereunder.

**Surety Bonds and Related Payment Obligations**

13.     In light of the nature of the Debtors' operations, the Debtors must maintain certain licensure at the state-level in order to lawfully market, transact, and otherwise conduct its business as a third-party administrator with respect to certain insurance products, policies, and services (such licenses, the "Licenses").  State Insurance Authorities (as defined herein) require the Debtors

to obtain and maintain such Licenses to continue operations for the A&H Arm of the business.

14. As a general matter, obtaining and maintaining the Licenses requires that the Debtors indemnify the state in the event the Debtors' breach of applicable state-level insurance related law gives rise to a claim against the state by third parties. In exchange for the state's issuance of the applicable License, the Debtors are generally required by law to post surety bonds (the "Surety Bonds") or a letter of credit[6](the "Standby Letter of Credit") to secure the Debtors' payment or performance of state Licenses, such as third-party administrator licenses,[7] and related obligations and, ultimately, to indemnify the state in the event the Debtors fail to satisfy such obligations.[8]  The Debtors are required to post Surety Bonds in favor of certain state-level insurance departments and bureaus, insurance commissioners, or departments of commerce (the "State Insurance Authorities") in an amount set by state law, generally related to a proportion of receipts from the prior year or an estimate of receipts in the applicable state for the coming year. In order to continue conducting their business under the License, the Debtors must maintain their Surety Bonds in favor of the applicable State Insurance Authority for a one-year term, which corresponds to the term of each License.  Failing to provide, maintain, or timely replace the Surety Bonds will prevent the Debtors from lawfully continuing to conduct their business in the applicable

---

[6] Certain of the Licenses are backed by a Standby Letter of Credit.  In total, the Debtors have issued one (1) Standby Letter of Credit in the aggregate principal amount of $150,000 in favor of Truist Bank and on account of non-Debtor Benefytt, LLC.  The Standby Letter of Credit pertains to certain regulatory requirements and not any of the Debtors' Insurance Policies in particular.

[7] Third-Party Administrator Licenses (the "TPA Licenses") are state licenses issued to organizations or individuals that handle the claims, processing, and reporting components of self-funded health benefits plans.  The TPA Licenses are issued by State Insurance Authorities (as define herein) for a certain period of time with the possibility of renewal.

[8] In the event a State Insurance Authority draws upon a Surety Bond for a certain amount, the issuer will pay the Statue Insurance Authority that amount and, in turn, the Debtors will be obligated to provide additional collateral to the issuer in the same amount of the draw in order to bring the principal amount of the Surety Bond up to the amount required under the terms of the Surety Bond.

state.

15. As of the Petition Date, the Debtors maintain sixteen (16) Surety Bonds in favor of the State Insurance Authorities for an aggregate principal amount of $2.88 million. Each of the Debtors' Surety Bonds is issued by Hartford Fire Insurance Company other than one (1) Surety Bond issued by Hartford Casualty Insurance Company. A schedule of the Surety Bonds currently maintained by the Debtors is attached as Exhibit 2 to the Order.

16. To continue their lawful business operations in the normal course, the Debtors must be able to provide financial assurances to the State Insurance Authorities. This, in turn, requires the Debtors to maintain the existing Surety Bonds, including by: (a) satisfying premiums and related obligations as and when due; (b) maintaining and/or providing surety bonds with collateral as necessary; (c) renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of their businesses; (d) requesting releases from terminated or obsolete bonding obligations; (e) canceling, revising, and/or supplementing surety bonds; and (f) executing other agreements in the ordinary course of business, as needed, in connection with the Surety Bonds. Failing to continue the Surety Bonds will prevent the Debtors from undertaking essential functions related to their operations. As of the Petition Date, the Debtors estimate that they are current with respect to all premium payments in respect of surety bonds and related obligations. Out of an abundance of caution, the Debtors nonetheless seek authority to satisfy any such premiums, fees, or related obligations in the ordinary course, and maintain and renew the standby letter of credit, and execute other such agreements, as needed in the ordinary course of business on a postpetition basis consistent with past practice.

**The Debtors' Insurance and Surety Brokers**

17. The Debtors obtain and maintain their Insurance Policies through their broker, NFP Corporation, other than the kidnapping, ransom, and extortion policy, and the EPLI policy, which are obtained from Aon PLC (together with NFP Corporation, the "Insurance Brokers"). The Debtors obtain all of their Surety Bonds through RSC Insurance Brokerage, Inc. (the "Surety Broker" and, together with the Insurance Brokers, the "Brokers"). The Brokers, among other things: (a) assist the Debtors in obtaining and maintaining comprehensive insurance and surety coverage for their operations in a cost effective manner, including choosing surety issuers (the "Surety Issuers"); (b) manage renewal data; and (c) provide ongoing support throughout the applicable policy periods for the Insurance Policies and Surety Bonds. In exchange for these services, the Debtors pay a broker commission and brokerage fees (collectively, the "Brokerage Fees"), usually at the same time the Debtors would pay their premiums.

18. As of the Petition Date, the Debtors are current on their Brokerage Fees. Out of an abundance of caution, the Debtors nonetheless request authority to pay the prepetition obligations owed to the Brokers and to continue to pay the Brokers for services rendered in the ordinary course of business to ensure uninterrupted coverage under their Insurance Policies and Surety Bonds.

19. The Debtors believe that they do not owe any amounts in prepetition Insurance Premiums, Deductibles, Self-Insured Retentions, Brokerage Fees, and premiums and costs related to the Surety Bonds.

**Basis for Relief**

**I.   Continuation of the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Guidelines.**

20. The Debtors' existing Insurance Policies provide a comprehensive range of protection of the Debtors' business and assets. Therefore, it is essential that the Debtors' Insurance

9

Policies continue in full force and effect during the course of these chapter 11 cases. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. The coverage of the Insurance Policies is also often required by various state and federal regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities.

21. Further, the U.S. Trustee Guidelines require that a debtor in possession under chapter 11 of the Bankruptcy Code maintain insurance and pay all Insurance Premiums as they come due. *See* U.S. Trustee Guidelines at III(A). The U.S. Trustee Guidelines further require, absent an order of the court otherwise, a debtor in possession under chapter 11 of the Bankruptcy Code to maintain (if applicable) casualty insurance, workers' compensation insurance, and general liability insurance along with any other insurance customary in such debtor's business. *Id.* at III(B). The relief requested in this motion is necessary to ensure that the Debtors comply with their obligations under the Bankruptcy Code, applicable law, and the U.S. Trustee Guidelines.

22. To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code and applicable state and federal regulations, the Debtors believe it is essential to their estates that they (a) maintain, and continue to make all payments required under, the Insurance Policies, and (b) have the authority to supplement, amend, extend, renew, or replace the Insurance Policies as needed, in the ordinary course of business without further order from the Court.

**II.     Continuing the Insurance Policies and the Surety Bonds and Paying Obligations Thereunder in the Ordinary Course of Business Is Warranted.**

23. In authorizing payments of prepetition obligations, courts have relied on several legal theories rooted in sections 105(a), 363(b), 503, and 1107(a) of the Bankruptcy Code. Pursuant to these sections of the Bankruptcy Code, the Court may authorize the Debtors to pay

10

any prepetition amounts due on account of the Insurance Policies, and to maintain the Insurance Policies and the Surety Bonds, including renewing or entering into new policies and surety bonds on a postpetition basis, because the relief requested is consistent with the value preservation policy of chapter 11.

24. Several courts, including in the Fifth Circuit, have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

25. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor in possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ L.L.C.*, 273 B.R. at 497).

26. The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court and empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Under section 105(a) of the Bankruptcy Code, courts may authorize payments of prepetition obligations when essential to the continued operation of a debtor's business pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *CoServ, L.L.C.*, 273 B.R. at 492. Necessity is demonstrated under section 105(a) of the Bankruptcy Code when, without dealing with the third party, the debtor risks harm or the loss of economic advantage to the estate (or the debtor's going concern value) and there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *See id.* at 498. The Court's power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations has long been recognized as precedent within the Fifth Circuit. *See id.* at 492-93. Today, the rationale for the necessity of payment rule—enabling the rehabilitation of a debtor in reorganization cases—is the paramount policy and goal of chapter 11. *See id.* at 497 (finding that, where claims require satisfaction for the debtor in possession to perform its obligations, the bankruptcy court is able to use section 105 of the Bankruptcy Code to authorize satisfaction of prepetition claims in aid of preservation or enhancement of the estate). Satisfying possible outstanding or future obligations related to the Insurance Policies, the Brokerage Fees, and the Surety Bonds is warranted under the doctrine of necessity.

27. Failure to maintain the Insurance Policies, Surety Bonds, and Letters of Credit could have a detrimental impact on the Debtors' business, operations, and the value of their estates. Any interruption in insurance coverage would expose the Debtors to a number of risks, including potential (a) direct liability for the payment of claims that otherwise would have been covered under the Insurance Policies, (b) material costs and other losses that otherwise would have been reimbursed, (c) inability to obtain similar insurance coverage on terms as equally favorable as the present coverage, (d) higher costs for reestablishing lapsed Insurance Policies or obtaining new

insurance coverage, and (e) regulatory exposure in the event the Debtors are required to maintain certain insurance and surety coverage to continue their operations. If any of these situations arise, the Debtors and their advisors would be forced to address these matters, thus expending limited time and resources.

28. The Debtors seek to continue, renew, amend, supplement, and extend their existing Insurance Policies and the Surety Bonds, purchase new policies and coverage, and issue letters of credit in the ordinary course of business on a postpetition basis consistent with past practice. Failure to timely honor any outstanding prepetition obligations on account of the Insurance Policies and the Surety Bonds could negatively affect the Debtors' ability to enter into such amendments, supplements, extensions, or new policies and coverage. Continuation of the Insurance Policies and the Surety Bonds is essential to preserving the value of the Debtors' assets and minimizing exposure to risk during the pendency of these Chapter 11 Cases. The Debtors should be authorized to pay any prepetition obligations related thereto and to renew, supplement, purchase, or enter into new insurance or surety bond coverage, including letters of credit, in the ordinary course of business on a postpetition basis consistent with past practice.

### III. To the Extent the Court Determines that the Surety Bonds are a Secured Extension of Credit, Relief is Appropriate under Section 364 of the Bankruptcy Code.

29. Under section 364(c) of the Bankruptcy Code, a debtor may obtain unsecured credit in the ordinary course of business or obtain secured credit (a) with priority over administrative expenses, (b) secured by a lien on unencumbered estate assets, or (c) secured by a junior lien on previously encumbered assets. 11 U.S.C. § 364(c). To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Given the

13

Debtors' current financial circumstances, the Debtors may not be able to obtain financial accommodations comparable to those offered by the Surety Broker on an unsecured basis or administrative expense basis. To the extent a Surety Bond is deemed an extension of credit, section 364 of the Bankruptcy Code provides the Debtor ample authority to renew existing Surety Bonds and procure new ones, whether on an unsecured basis or, if necessary, on a secured basis.

30. Continuing the Surety Bonds is necessary to maintain the Debtors' current business operations. As described above, the Debtors are required to provide surety bonds or other forms of credit support to certain third parties, often governmental units or other public agencies, to secure the payment or performance of certain obligations. The Debtors therefore seek authority to furnish the Surety Issuers (or any new provider of Surety Bonds) with collateral or new forms of credit support with respect to the Debtors' existing Surety Bonds, Surety Bond renewals, or any new Surety Bonds.

## Emergency Consideration

31. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm. The Debtors have satisfied the "immediate and irreparable harm" and request that the Court approve the Motion on an emergency basis.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

32. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests

as relating to an authorized payment in respect of the relief requested herein. Checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. The Debtors request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

33. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

34. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties

in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

35.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Consenting Term Lenders; (d) counsel to the Consenting Term Lenders; (e) counsel to the Consenting Revolving Lenders; (f) counsel to the DIP Lender; (g) counsel to the agents under the Debtors' postpetition credit facilities and DIP credit facility; (h) the state attorneys general for each of the states in which the Debtors operate; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) other governmental agencies having a regulatory or statutory interest in these cases; (m) the Insurance Carriers; (n) the Brokers; (o) Surety Issuers; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d). In light of the nature of the relief requested, no other or further notice is required.

The Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  May 23, 2023

/s/  *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, P.C. (*pro hac vice* pending) |
| J. Machir Stull (TX Bar No. 24070697) | John R. Luze (*pro hac vice* pending) |
| Victoria N. Argeroplos (TX Bar No. 24105799) | Jeffrey T. Michalik (*pro hac vice* pending) |
| 1401 McKinney Street, Suite 1900 | Yusuf Salloum (*pro hac vice* pending) |
| Houston, TX 77010 | 300 North LaSalle Street |
| Telephone: (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile: (713) 752-4221 | Telephone:    (312) 862-2000 |
| Email:       mcavenaugh@jw.com | Facsimile:    (312) 862-2200 |
|              jwertz@jw.com | Email:         patrick.nash@kirkland.com |
|              mstull@jw.com |                   john.luze@kirkland.com |
|              vargeroplos@jw.com |                   jeff.michalik@kirkland.com |
| |                   yusuf.salloum@kirkland.com |
| *Proposed Co-Counsel to the Debtors* | *Proposed Co-Counsel to the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

**Certificate of Service**

I certify that on May 23, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh