IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) ) ) | Case No. 23-90566 (CML) |
| Debtors. | ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE PAYMENT OF
CERTAIN TAXES AND FEES, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 23, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 23, 2023, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975). The location of the Debtors' service address is: 3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

### Relief Requested

1. The Debtors seek entry of an order, substantially in the attached form (the "Order") (a) authorizing the Debtors to remit and pay (or use tax credits to offset) Taxes and Fees (including licenses) in the ordinary course of business that are payable or become payable during these chapter 11 cases (including any obligations subsequently determined upon audit or otherwise to be owed for periods prior to the Petition Date), without regard to whether such obligations accrued or arose before or after the Petition Date (as defined below); and (b) granting related relief.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

---

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the Declaration of Michael DeVries, Chief Financial Officer of Benefytt Technologies, Inc. in Support of Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), filed contemporaneously herewith on May 23, 2023 (the "Petition Date"). Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

**Background**

5.     The Debtors are a technology-driven distributor of insurance products covering Medicare-related insurance plans as well as other types of health insurance and supplemental products that operate in 44 states including Texas, New York, California, and Florida. Headquartered in Tampa, Florida and employing approximately 855 people, the Debtors develop and operate Medicare and private health insurance online marketplaces, insurance agent technology systems, and insurance policy administration platforms, as well as conduct marketing and lead generation for insurance providers.  The Debtors provide self-guided online tools for individuals to compare Medicare, private, and supplemental health insurance products; an extensive network of licensed insurance agents empowered by a technology platform to facilitate enrollments; and other insurance technology allowing agents and brokers to service their customers and manage their business seamlessly.

6.     On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated as of the date hereof.

**Taxes and Fees Overview**

7.     The Debtors collect, withhold, and incur certain sales, use, income, personal property, and other governmental taxes (collectively, the "Taxes"), as well as other governmental fees, assessments, and additions to tax (collectively, the "Fees"), including annual fees associated

3

with their ability to conduct business in certain jurisdictions as a third-party administrator and to maintain licensure (the "Licenses").[3]  The Debtors pay or remit, as applicable, Taxes and Fees to various governmental authorities (each, an "Authority" and, collectively, the "Authorities") on a periodic basis (monthly, quarterly, semi-annually, annually, and on an ad hoc basis depending on the Debtors' reporting calendar) depending on the nature and incurrence of a particular Tax or Fee and as required by applicable laws and regulations.[4]  A schedule identifying the Authorities is attached hereto as **Exhibit A**.[5]  The Debtors generally pay and remit Taxes and Fees through checks and electronic transfers that are processed through their banks and other financial institutions or service providers.  From time to time, the Debtors may also receive tax credits for overpayments or refunds in respect of Taxes or Fees.  The Debtors generally use these credits in the ordinary course of business to offset against future Taxes or Fees, or have the amount of such credits refunded to the Debtors.

8. Additionally, the Debtors may become subject to audit investigations on account of tax returns and/or tax obligations in respect of prior years ("Audits") during these chapter 11 cases. Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors,

---

[3] The Debtors are required by law to post surety bonds to secure the Debtors' payment or performance of Licenses, which program is described in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered Into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Renew, Supplement, Amend, Extend, or Purchase Insurance Policies, (C) Continue to Pay Brokerage Fees, and (D) Maintain the Surety Bonds, and (II) Granting Related Relief*.

[4] Other than with respect to any potential unknown Audits or Assessments, this motion does not seek relief with respect to the Debtors' collection and remittance of employee-related taxes and withholdings, which are instead addressed in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

[5] Although **Exhibit A** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit A**.  The Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified in **Exhibit A**.

including late payment of Taxes and Fees (such additional Taxes and Fees, "<u>Assessments</u>").[6] The Debtors seek authority to pay or remit tax obligations on account of any Assessments as they arise in the ordinary course of the Debtors' business, including as a result of any resolutions of issues addressed in an Audit.

9. The Debtors seek authority to pay and remit all prepetition and postpetition obligations on account of Taxes and Fees, including: (a) Taxes and Fees that accrue or are incurred postpetition; (b) Taxes and Fees that have accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (c) payments made by the Debtors prepetition that were lost or otherwise not received in full by any of the Authorities; and (d) Taxes and Fees incurred for prepetition periods that become due and payable after the commencement of these chapter 11 cases, including as a result of Audits. In addition, the Debtors seek authority to pay Taxes and Fees for so-called "straddle" periods.[7]

10. Any failure by the Debtors to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways, including (but not limited to): (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from these chapter 11 cases; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and/or pursue other remedies (such as the revocation of Licenses) that will harm the Debtors' estates; and (c) in certain instances, the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key

---

[6] Nothing in this Motion, or any related order, constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment. The Debtors expressly reserve all rights with respect to any Audit and the right to contest any Assessments claimed to be due as a result of any Audit.

[7] The Debtors reserve their rights with respect to the proper characterization of any "straddle" Taxes and Fees and to seek reimbursement of any portion of any payment made that ultimately is not entitled to administrative or priority treatment.

individuals from their duties related to the Debtors' chapter 11 cases. Taxes and Fees not timely paid as required by law may result in fines and penalties, the accrual of interest, or both. Risking any of these negative outcomes is particularly unnecessary here given the prepackaged nature of the Debtors' chapter 11 cases. The Debtors also collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates. The Debtors seek authority to pay the Taxes and Fees as they become due.

11.     The Debtors estimate that approximately $347,622.00 in Taxes and Fees is outstanding as of the Petition Date.[8]

| Category | Description | Approximate Amount Accrued and Unpaid as of Petition Date |
|---|---|---|
| Income and Franchise Taxes | Income and franchise taxes incurred in the ordinary course of business based on the jurisdictions in which the Debtors do business, generally payable on an annual basis. | $161,622 |
| Sales and Use Taxes | Taxes on goods and services sold or used, assessed based on the value of such goods and services, generally payable on a monthly basis. | $151,000 |
| Property Taxes | Taxes related to personal property holdings, generally payable on an annual or semi-annual basis. | $0 |
| Regulatory and Other Taxes and Fees | Taxes and Fees related to compliance with regulatory requirements, including periodic licensing, permitting, reporting, and similar requirements, and maintenance of the Licenses, each generally payable on an annual or quarterly basis, depending on the specific Tax or Fee. | $35,000 |
| | **Total** | **$347,622.00** |

---

[8]  The Debtors cannot predict the amounts of any potential Assessments that may result from Audits, if any. The Debtors' estimate of outstanding Taxes and Fees as of the Petition Date does not include any amounts relating to potential Assessments.

**I.      Income and Franchise Taxes.**

12.     The Debtors incur and are required to pay various state, local, and federal (i) income taxes and (ii) franchise taxes, as applicable (collectively, the "Income and Franchise Taxes"), in the jurisdictions where the Debtors operate.  The Debtors generally pay Income and Franchise Taxes on an annual basis (with certain such payments made more frequently).  As of the Petition Date, the Debtors estimate that they owe approximately $161,622 to the applicable Authorities on account of prepetition Income and Franchise Taxes.  The Debtors request authority to satisfy any amounts owed on account of such Income and Franchise Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

**II.     Sales and Use Taxes.**

13.     The Debtors incur, collect, and remit sales and use and excise taxes to the Authorities in connection with the sale, purchase, and use of goods and services (collectively, the "Sales and Use Taxes").  The Debtors generally pay Sales and Use Taxes on a monthly basis.  As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $151,000 in Sales and Use Taxes that have not been remitted to the relevant Authorities.[9]  The Debtors request authority to satisfy any amounts owed on account of such Sales and Use Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

**III.    Property Taxes.**

14.     State and local laws in the jurisdictions where the Debtors operate generally grant Authorities the power to levy property taxes against the Debtors' personal property

---

[9]   A significant portion of such amount is related to an assessment from an Authority which is subject to ongoing reconciliation and discussion.

7

(collectively, the "Property Taxes").[10]  To avoid the imposition of statutory liens on their personal property, the Debtors generally pay the Property Taxes to the applicable Authorities in the ordinary course of business on an annual or semi-annual basis, depending on the specific Taxes or Fees. In 2022, the Debtors paid approximately $48,600 in aggregate Property Taxes to the Authorities. The Debtors request authority to satisfy any amounts owed on account of such Property Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

### IV.  Regulatory and Other Taxes and Fees.

15.  The Debtors incur, in the ordinary course of business, certain regulatory assessments, permitting, licensing and other operational fees, including fees related to maintenance of the Licenses, certain regulations, franchise taxes, and other miscellaneous taxes and fees (collectively, "Regulatory and Other Taxes and Fees").  The Debtors generally pay Regulatory and Other Taxes and Fees to the relevant Authorities on an annual or quarterly basis.  In 2022, the Debtors paid approximately $871,800 in aggregate Regulatory and Other Taxes and Fees.  Such amounts were remitted to the Authorities in connection with required annual reporting, licensing and permitting fees and other business taxes.  As of the Petition Date, the Debtors estimate that approximately $35,000 in Regulatory and Other Taxes and Fees will have accrued and remain unpaid to the relevant Authorities.  The Debtors request authority to satisfy any amounts owed on account of such Regulatory and Other Taxes and Fees that may become due and owing in the ordinary course of business during their chapter 11 cases.

### V.  Audits.

16.  The Debtors seek authority to pay or remit tax obligations on account of Audits as they arise, including as a result of any resolutions of issues addressed in an Audit.  Nothing in this

---

[10]  For the avoidance of doubt, the Debtors own no real property subject to property taxes.

Motion, or any related order, constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment. The Debtors expressly reserve all rights with respect to any Audit. Furthermore, the Debtors reserve the right to contest any Assessments claimed to be due as a result of the Audits.

## **Basis for Relief**

I.   **Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

17.   Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." Certain of the Taxes and Fees, such as the sales and Use Taxes, are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. *See, e.g.*, 26 U.S.C. § 7501 (stating that certain Taxes and Fees are held in trust); *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57–60 (1990) (holding that certain taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate). For example, all U.S. federal internal revenue tax withheld is considered to be held in a special fund in trust for the United States. *Begier*, 496 U.S. at 60. Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" Taxes and Fees, the Debtors should be permitted to pay those funds to the applicable Authorities as they become due.[11]

---

[11]   For clarity, the Debtors are requesting authority to pay the Taxes and Fees described herein regardless of whether such Taxes and Fees constitute trust fund obligations.

9

**II.     Certain of the Taxes and Fees May Be Priority Claims Entitled to Priority Treatment Under the Bankruptcy Code.**

18.     Claims on account of certain of the Taxes and Fees may be priority claims entitled to payment before general unsecured claims.  *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment).  To the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").  Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  Payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.  *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000) ("[C]ertain types of claims enjoy a priority status in addition to being sometimes critical to the ongoing nature of the business.  For instance . . . certain tax claims are both priority claims in whole or in part.  The need to pay these claims in an ordinary course of business time-frame is simple common sense.").  Payment of such Taxes and Fees likely will give Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors the potential interest expense, legal expense, and penalties that might otherwise accrue on the Taxes and Fees during these chapter 11 cases.

19.     It is also possible that at least some of the Taxes and Fees may be entitled to secured status with respect to the property that the Debtors own.  As secured claims, these Taxes and Fees would be entitled to priority treatment when the Debtors sell the property that these Taxes and Fees are recorded against or when the Debtors confirm a plan of reorganization.  *See* 11 U.S.C. §§

10

506(a); 1129(a)(9)(C); 1129(b)(2)(A) (requiring that any plan of reorganization "crammed down" over a class of secured creditors pay those creditors in full or allow those creditors to retain their liens). Authority to pay the Taxes and Fees only affects the timing of the payments and will not unduly prejudice the rights and recoveries of other creditors of the Debtors.

### III.     Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.

20.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). These courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

21.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases).

22.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re CoServ*, 273 B.R. at 616 (finding

that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay prepetition claims). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). The Bankruptcy Code authorizes the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate. *See, e.g.*, *In re CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."). At least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

23. The timely payment of the Taxes and Fees is critical to the Debtors' continued and uninterrupted operations. If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting such key personnel from the administration of these chapter 11 cases. *See, e.g.*, *Schmehl v. Helton*, 662 S.E.2d 697, 707 (W. Va. 2008) (noting that corporate officers may be held responsible for payment of certain corporate taxes); *In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)). Any collection action on account of such amounts, and any potential ensuing liability, would distract the Debtors

and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors' continued operations and essential to the orderly administration and the success of these chapter 11 cases.[12]

24. Finally, the Debtors' failure to timely pay Taxes and Fees may result in increased tax liability for the Debtors if interest and penalties accrue on the unpaid Taxes and Fees. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders.

25. The Court should authorize the Debtors to pay all prepetition and postpetition obligations on account of Taxes and Fees, including any Assessments.

### Emergency Consideration

26. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm. The Debtors have satisfied the "immediate and irreparable harm" standard and request that the Court approve the Motion on an emergency basis.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

27. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Checks or wire

---

[12] Nothing herein is a concession that the Debtors' officers, directors, or employees would have personal liability for unpaid taxes. However, the threat of such collection efforts, even if ultimately unwarranted, would be a critical distraction. In addition, such individuals may be entitled to indemnification by the Debtors' estates which would be an unnecessary cost to be incurred.

13

transfer requests that are not related to authorized payments will not be honored inadvertently. The Debtors request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

28. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

29. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of

all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **Notice**

30. The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Consenting Term Lenders; (d) counsel to the Consenting Revolving Lenders; (e) counsel to the DIP Lender; (f) counsel to the agents under the Debtors' postpetition credit facilities and DIP credit facility; (g) the state attorneys general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) other governmental agencies having a regulatory or statutory interest in these cases; (l) the Authorities; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d). In light of the nature of the relief requested, no other or further notice is required.

The Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  May 23, 2023

/s/  *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Patrick J. Nash, P.C. (*pro hac vice* pending) |
| J. Machir Stull (TX Bar No. 24070697) | John R. Luze (*pro hac vice* pending) |
| Victoria N. Argeroplos (TX Bar No. 24105799) | Jeffrey T. Michalik (*pro hac vice* pending) |
| 1401 McKinney Street, Suite 1900 | Yusuf Salloum (*pro hac vice* pending) |
| Houston, TX 77010 | 300 North LaSalle Street |
| Telephone: (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile: (713) 752-4221 | Telephone:    (312) 862-2000 |
| Email: mcavenaugh@jw.com | Facsimile:    (312) 862-2200 |
|        jwertz@jw.com | Email:         patrick.nash@kirkland.com |
|        mstull@jw.com |                     john.luze@kirkland.com |
|        vargeroplos@jw.com |                     jeff.michalik@kirkland.com |
| |                     yusuf.salloum@kirkland.com |
| *Proposed Co-Counsel to the Debtors* | *Proposed Co-Counsel to the Debtors* |
| *and Debtors in Possession* | *and Debtors in Possession* |

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/  Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## **Certificate of Service**

I certify that on May 23, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/  Matthew D. Cavenaugh*
Matthew D. Cavenaugh