# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 23-90566 (CML) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF STRETTO, INC. AS CLAIMS, NOTICING, AND SOLICITATION AGENT

> **Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 23, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 23, 2023, at 2:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage.  The meeting code is "JudgeLopez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975).  The location of the Debtors' service address is:  3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency *ex parte* application to employ a claims, noticing, and solicitation agent (the "Application"):[2]

### Relief Requested

1.      The Debtors seek entry of an order authorizing the Debtors to employ Stretto, Inc. ("Agent") as claims, noticing, and solicitation agent (in such capacity, the "Claims and Noticing Agent") in accordance with the terms and conditions set forth in the engagement letter, dated May 9, 2023 (the "Engagement Letter"), attached as **Exhibit A**.  The Application is supported by the *Declaration of Sheryl Betance in Support of Debtors' Emergency* Ex Parte *Application for Entry of an Order Authorizing the Employment and Retention of Stretto, Inc. as Claims, Noticing, and Solicitation Agent* attached as **Exhibit B** (the "Betance Declaration").

2.      Emergency consideration of this Application is requested to effectuate the Debtors' transition into bankruptcy and to immediately begin providing effective notice of pleadings and orders to interested parties.

---

[2]      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael DeVries, Chief Financial Officer of Benefytt Technologies, Inc. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on May 23, 2023 (the "Petition Date").  Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

**Jurisdiction and Venue**

3.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.

4.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Request to Employ Agent**

6.     The Debtors request approval to employ Agent to serve as Claims and Noticing Agent in their chapter 11 cases to provide the services outlined in the Engagement Letter.  The Debtors believe that Agent's employment is in the best interest of the estates.

7.     Agent's rates are competitive and reasonable.  Agent has the expertise required in a complex chapter 11 case.

8.     The Debtors request this Court authorize Agent's employment.

**Compensation**

9.     The Debtors request that Agent's fees and expenses be paid as an administrative expense in the ordinary course of the Debtors' businesses without further application or order of the Court.  Should a dispute develop, the matter will be brought to the Court for resolution.  Agent agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.

10.     Agent will provide a monthly invoice to the Debtors, Debtors' counsel, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), counsel for any official committee and any party in interest who specifically requests service of the monthly invoices.

11.     Prior to the Petition Date, the Debtors provided Agent an advance in the amount of $25,000.  Agent will apply these funds in accordance with the Engagement Letter.

## Indemnification

12.      The Debtors have agreed to indemnify Agent as set forth in the Engagement Letter. Notwithstanding anything to the contrary, Agent will not be indemnified for liability arising out of gross negligence, willful misconduct, and certain other matters identified in the proposed Order.

## Disinterestedness

13.      Agent has reviewed its database to determine whether it has any relationships with the Debtors' creditors and parties in interest.  Except as disclosed in the Betance Declaration, Agent represents that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.  To the best of the Debtors' knowledge, Agent is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Agent agrees that it will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

The Debtors request that the Court grant the relief requested in this Application.

Houston, Texas
Dated:  May 23, 2023

/s/  *Matthew D. Cavenaugh*
**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria N. Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email:          mcavenaugh@jw.com
                    jwertz@jw.com
                    mstull@jw.com
                    vargeroplos@jw.com


*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, P.C. (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
Jeffrey T. Michalik (*pro hac vice* pending)
Yusuf Salloum (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                    john.luze@kirkland.com
                    jeff.michalik@kirkland.com
                    yusuf.salloum@kirkland.com


*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

This Application is being filed *ex parte*.  Service will only occur by notice on the Court's CM/ECF system.

/s/  *Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## Exhibit A

**Engagement Letter**



# Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of May 9, 2023 between Stretto, Inc. ("**Stretto**") and Benefytt Technologies, Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**"). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including the Company) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses is expected to be incurred to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid

---

[1]     The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $25,000. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses.  Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount.  Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Company of such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – █████████
> Account Number – ████████
> Account Name – Stretto
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3.   Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.



4. **Confidentiality**

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

5. **Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7. **Term and Termination**

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

3

(d)  If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8.  No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9.  Indemnification

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)  Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)  The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10.  Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11.  Company Data

(a)  The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as Exhibit A, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. California Consumer Privacy Act.

(a) Definitions.  In this Section,
   (i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
   (iii) "**Commercial Purposes**," "**Sell**," "**Business**," and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

## 13. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

## 14. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial



or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

### 15.  Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 16.  Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

### 17.  Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

### 18.  Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

### 19.  Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:               Stretto

If to Stretto:          Stretto
                        410 Exchange, Ste. 100
                        Irvine, CA 92602
                        Attn: Sheryl Betance
                        Tel: 714.716.1872
                        Email: sheryl.betance@stretto.com

If to the Company:
                        Benefytt Technologies, Inc.
                        3450 Buschwood Park Drive, Suite 200
                        Tampa, Florida 33618
                        Attn: Todd Baxter
                        Tel: (877) 376-5831
                        Email: todd.baxter@bfyt.com

With a copy to:
                        Kirkland & Ellis LLP
                        601 Lexington Avenue
                        New York, New York 10022
                        Attn: John R. Luze
                        Jeffrey T. Michalik
                        Tel: (312) 862-2000
                        (312) 862-2200
                        Email: john.luze@kirkland.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.


Stretto

_____
By: Sheryl R. Betance

Title:  Senior Managing Director




Benefytt Technologies, Inc.

_____
By: Todd Baxter

Title: Chief Executive Officer

7

410 Exchange, Ste. 100
Irvine, CA 92602
Attn:    Sheryl Betance
Tel:    714.716.1872
Email:    sheryl.betance@stretto.com

If to the Company:    Benefytt Technologies, Inc.
3450 Buschwood Park Drive, Suite 200
Tampa, Florida 33618
Attn:    Todd Baxter
Tel:    (877) 376-5831
Email:    todd.baxter@bfyt.com

With a copy to:    Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn:    John R. Luze
Jeffrey T. Michalik
Tel:    (312) 862-2000
(312) 862-2200
Email:    john.luze@kirkland.com
jeff.michalik@kirkland.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

_____

By:

Title:

Benefytt Technologies, Inc.

*Todd Baxter*
DocuSigned by:
4201661DB5D6470...

By:    Todd Baxter
Title:    Chief Executive Officer



**Exhibit A**

# GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

## RECITALS

**WHEREAS**,

(A)     The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)     The Company acts as a Controller of the Company Personal Data.

(C)     The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Company instructs the Processor to process Company Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.     **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)     "**Addendum**" shall mean this GDPR Addendum;

(b)     "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)     "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)     "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)     "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

(f)     "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)     The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.     **Obligations of the Company.**  The Company agrees and warrants:

(a)     that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)     that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)     that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)     that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)     that it will ensure compliance with the technical and organizational security measures; and

(f)     that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.     **Obligations of the Processor.**  The Processor agrees and warrants:

(a)     to comply with the Data Protection Laws;

(b)     to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

STRETTO

(c)      that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)      that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)      that it will promptly notify the Company about:

     i.      any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

     ii.      any accidental or unauthorized access; and

     iii.      any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)      to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)      to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)      that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.**      **Obligations after Termination of Personal Data Processing Services.**

(a)      The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

(b)     The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.     **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.

## Exhibit B

**Betance Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BENEFYTT TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 23-90566 (CML) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

### DECLARATION OF SHERYL BETANCE IN SUPPORT
### OF DEBTORS' EMERGENCY *EX PARTE* APPLICATION FOR ENTRY
### OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
### OF STRETTO, INC. AS CLAIMS, NOTICING, AND SOLICITATION AGENT

I, Sheryl Betance, under penalty of perjury, declare as follows:

1.      I am a Senior Managing Director of Stretto, Inc. ("Agent"), a chapter 11 administrative services firm whose headquarters are located at 410 Exchange, Ste. 100, Irvine, California 92602.  Except as otherwise noted in this declaration (this "Declaration"), I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently as follows.

2.      I submit this Declaration in support of the above-captioned Debtors' (collectively, the "Debtors") *Emergency* Ex Parte *Application for Entry of an Order Authorizing the Employment*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Benefytt Technologies, Inc. (2634); American Service Insurance Agency LLC (9115); Benefytt Reinsurance Solutions, LLC (4601); BimSym-HPIH, LLC (4626); Dawn Acquisition Company, LLC (0909); Daylight Beta Intermediate Corp. (7248); Daylight Beta Intermediate II Corp. (8842); Daylight Beta Parent Corp. (6788); Health Insurance Innovations Holdings, Inc. (1994); Health Plan Intermediaries Holdings, LLC (0972); Healthinsurance.com, LLC (9525); HealthPocket, Inc. (3710); Insurance Center for Excellence, LLC (4618); RxHelpline, LLC (9940); Sunrise Health Plans, LLC (3872); TogetherHealth Insurance, LLC (9503); TogetherHealth PAP, LLC (8439); and Total Insurance Brokers, LLC (7975).  The location of the Debtors' service address is:  3450 Buschwood Park Drive, Suite 200, Tampa, Florida 33618.

*and Retention of Stretto, Inc. as Claims, Noticing, and Solicitation Agent*, filed contemporaneously herewith (the "Application").[2]

3.      Agent represents the following:

(a)      Agent, its members, and employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders, or employees of the Debtors;

(b)      Agent will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)      by accepting employment in these chapter 11 cases, Agent waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)      in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Agent will not be an agent of the United States and will not act on behalf of the United States;

(e)      Agent will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)      Agent is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)      in its capacity as Claims and Noticing Agent in these chapter 11 cases, Agent will not intentionally misrepresent any fact to any person;

(h)      Agent shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

---

[2]      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Michael DeVries, Chief Financial Officer of Benefytt Technologies, Inc. in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith on May 23, 2023 (the "Petition Date"). Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

(i)      Agent will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)      none of the services provided by Agent as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

4.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these chapter 11 cases. The results of the conflict check were compiled and reviewed by Agent professionals under my supervision. Agent is not aware of any connection that would present a disqualifying conflict of interest. Should Agent discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Agent will use reasonable efforts to promptly file a supplemental declaration.

5.      To the best of my knowledge, neither Agent, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors, or other relevant parties. Agent may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Agent serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

6.      Agent discloses the following connections, each of which Agent believes does not present an interest adverse to the Debtors:

- In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point Capital LLC ("Stone Point"). Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut. The firm has raised and managed nine private equity funds – the Trident Funds – with aggregate committed capital of approximately $40 billion. Stone Point targets investments in the global financial services industry and related sectors. Stretto has determined that NFP Corp, owned by Trident Fund VI, has been identified as a broker of the Debtors. Additionally, Stretto has determined that SunFireMatrix, Inc., owned by Trident Fund VIII, has been identified as a trade vendor of the Debtors. Further, Stretto has determined that Kroll (f/k/a Duff & Phelps) owned by Trident Fund VIII, has been identified as a contract counterparty of the Debtors. Stretto is owned by Trident VI Funds managed by private equity

firm Stone Point.   However, to the best of Stretto's knowledge, Stretto's relationship to this entity does not create any adverse interest against the Debtors' estates that would present a disqualifying conflict of interest, and there are no other connections that require disclosure.

- Grant Thornton LLP has been identified as a Potential Party in Interest.  John Baumgartner, a Managing Director with Grant Thornton LLP, is a current client of Stretto's depository services business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- FTI Consulting, Inc. has been identified as a Potential Party in Interest.  Guy Davis, a Senior Managing Director with FTI Consulting, Inc., is a current client of Stretto's depository services business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- Berkley Research Group has been identified as a Potential Party in Interest.  Jay Borrow, a Managing Director with Berkley Research Group, is a current client of Stretto's depository services business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- The Potential Parties in Interest list identifies Allstate Insurance Company and Regions Bank as an employee benefit plan provider and secured creditor, respectively, of the Debtors.  Allstate Insurance Company and Regions Bank are two of Stretto's lenders.  However, to the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.

- The Potential Parties in Interest list identifies Western Alliance Bank as a banking institution of the Debtors.  Western Alliance Bank is one of Stretto's bank vendors.  However, to the best of my knowledge, such relationship is materially unrelated to these chapter 11 cases.

- The Potential Parties in Interest list identifies one of Stretto's lenders, ING Capital LLC, as an insurance carrier of the Debtors.  However, to the best of my knowledge, such relationship is materially unrelated to these chapter 11 cases.

- Additionally, the list of Potential Parties in Interest includes entities, as set forth on Annex 1 attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services.  However, to the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.

7.     I believe that Agent is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: May 23, 2023

/s/ Sheryl Betance
Sheryl Betance
Senior Managing Director
Stretto, Inc.
410 Exchange, Ste. 100
Irvine, California 92602

**Annex 1**

Aetna Life And Casualty Bermuda
Alabama Department of Revenue
Aon Risk Services, et al.
Arizona Department of Revenue
AT&T
BANK OF AMERICA, N.A.
CANON SOLUTIONS AMERICA INC
CDW
Colorado Department of Revenue
Comptroller of Maryland
DAS Health
Delaware Secretary of State
Delta Dental
Fidelity Investments
Florida Department of Revenue
Georgia Department of Revenue
GREAT AMERICAN MERCHANDISE
Idaho State Tax Commission
Illinois Department of Revenue
Indiana Department of Revenue
Iowa Department of Revenue
Iron Mountain
Kansas Department of Revenue
Kentucky Department of Revenue
Kforce Inc.
Locke Lord LLP
Massachusetts Department of Revenue
Minnesota Revenue
New Mexico Taxation and Revenue
Department
North Carolina Department of Revenue
Ohio Department of Taxation
Salesforce.com, Inc.
South Carolina Department of Revenue
State of Connecticut
State of Michigan

Tennessee Department of Revenue
Texas Comptroller of Public Accounts
UNITED CONCORDIA CO. INC.
Utah State Tax Commission
Virginia Department of Taxation
Vision Service Plan
Washington State Department of Revenue
Wells Fargo
Wisconsin Department of Revenue